No. 90-263 and 91-022

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

TIMOTHY ALAN HAMM,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Daniel Donovan, Attorney at Law, Great Falls, Montana

        For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
Paul D. Johnson, Assistant Attorney General, Helena,
Montana
Patrick L. Paul, Cascade County Attorney, Great
Falls, Montana; Steven M. Hudspeth, Deputy County
Attorney, Great Falls, Montana

FILED

SEP 10 1991

*Ed Smith*
Filed CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on briefs: July 25, 1991

Decided: September 10, 1991

_____
Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

A jury convicted the defendant, Timothy Allen Hamm (Hamm) of sexual intercourse without consent in the Eighth Judicial District, Cascade County. Pursuant to this conviction and a prior, unrelated conviction of sexual intercourse without consent, the trial court designated and sentenced Hamm as a persistent felony offender. From this conviction and sentence Hamm appeals. We affirm.

The following issues are raised on appeal.

1. Was the evidence sufficient to support the jury's verdict of sexual intercourse without consent?

2. Did Hamm knowingly, voluntarily, and intelligently waive his right to testify at trial?

3. Did Hamm receive effective assistance of counsel?

4. Was the trial court correct in designating Hamm a persistent felony offender?

Hamm did not testify at the trial; however, he presented witnesses and stipulated that he had sexual intercourse with the victim, D.B. on March 19, 1989. The following facts summarize D.B.'s testimony including facts elicited from her during cross-examination. D.B. testified that the incident charged was the third in a trilogy of forced sexual encounters by Hamm on the victim.

The first rape occurred in October, 1988, while D.B. was watching the children of Hamm's girlfriend. Assuming that Hamm arrived to pick-up the children D.B. let Hamm into the house. The children were sleeping in another part of the house, and D.B. and

her son were sleeping on the couch when Hamm arrived. Hamm grabbed D.B. by the hair, and ordered her to undress. The commotion awoke D.B.'s son and Hamm ordered D.B. to carry the child into another room.

D.B. was frightened of Hamm. She attempted to fight Hamm away and pleaded for him to stop. Hamm turned D.B. away from him and penetrated her. While holding onto D.B.'s hair, Hamm pushed D.B. to her hands and knees and continued raping her. Hamm finally stopped when he realized that his girlfriend's four-year-old child was in the kitchen observing the rape.

Afterwards, Hamm offered D.B. money if she would not tell his girlfriend of the rape. D.B. refused the money. She did not report this incident to the police; however, D.B. called the Mercy Home, for battered women. D.B. and her children remained at the Mercy Home for three weeks after the incident.

Approximately four months later, in February of 1989, Hamm came to D.B.'s house to apologize to her for the prior rape. She asked Hamm to leave. Hamm told her that he had nowhere to stay whereupon D.B. told him "if you leave me alone, you can stay."

Hamm went upstairs to sleep and D.B. stayed downstairs on the couch. Sometime later Hamm awoke D.B. and told her to follow him upstairs. D.B. was frightened of Hamm and did not want him to "force her again." D.B. had sex with Hamm, then went downstairs. D.B. had no phone, but she contacted her neighbor for assistance, and demanded that Hamm leave her house. D.B. did not report this incident to the police either.

The incident charged occurred, March 19, 1989. At approximately 1:00 a.m., Hamm appeared at D.B.'s house and accused D.B. of reporting the prior rape to the police. Hamm made advances and when D.B. declined, Hamm accused D.B. of "leading him on." He grabbed D.B. by the hair and pushed her up the stairs and onto the bed. Hamm ordered D.B. to undress.

Before D.B. had time to undress, Hamm forced his fingers into her vagina. D.B. cried, told Hamm that he was hurting her, and begged him to stop. Instead of stopping, Hamm pushed D.B. onto her stomach, penetrated her anus with his penis, pulled her onto her hands and knees and penetrated her vagina with his penis. Hamm asked D.B. if she enjoyed "forced sex." Hamm continued raping and abusing D.B. for several hours.

At approximately 7:20 a.m., D.B. got away from Hamm. She went to her neighbor's apartment, called the police and the Mercy Home, and then went to the hospital for a medical exam. The examining physician testified that he found a bruise on D.B.'s thigh and an abrasion in her vagina. The doctor concluded that force caused the abrasion.

Because Hamm was convicted of another rape on October 12, 1989, the District Court sentenced Hamm as a persistent felony offender under § 46-18-501, MCA.

Hamm appealed this sentence and conviction on April 18, 1990. This Court bifurcated Hamm's appeal by holding some issues in abeyance and remanding the following issues to the District Court for post-conviction evidentiary hearings: (1) Did Hamm voluntarily

4

waive his right to testify at trial; and (2) Did Hamm's attorney effectively represent Hamm at the trial? The District Court found that Hamm knowingly and voluntarily waived his right to testify; and that Hamm's attorney provided effective representation.

In this appeal, we have consolidated for our review issues relating to the trial and issues relating to the District Court's post-conviction determinations.

I

Was the evidence sufficient to support a verdict of guilty on the charge of sexual intercourse without consent?

Hamm stipulated that he had sexual intercourse with the victim on March 19, 1989. However, he contends that D.B. acquiesced and that the State's evidence was insufficient to support a guilty verdict.

The State contends that this verdict should not be set aside for insufficient evidence. This Court in viewing the evidence in the light most favorable to the prosecution agrees with the State that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Krum (1989), 238 Mont. 359, 362, 777 P.2d 889, 891.

In order to sustain the conviction of sexual intercourse without consent, the State had to prove that Hamm compelled the victim "to submit by force or by threat of imminent ... bodily injury." § 45-5-501, MCA. D.B.'s testimony demonstrated that Hamm used physical force to compel D.B. to perform sexual intercourse.

Hamm grabbed D.B. by her hair and forced her up the stairs. Hamm ordered her to undress and asked D.B. if she liked "forced sex." Hamm repeatedly penetrated her while she cried and pleaded with him to stop. D.B.'s testimony was confirmed by her examining physician who testified that the abrasion discovered on the victim's vagina after the rape indicated "some degree of force."

These facts indicate that the jury had substantial evidence to support the conclusion that Hamm compelled D.B. to submit to sexual intercourse by force. Because a rational trier of fact could have found beyond a reasonable doubt the essential element of "without consent", we hold that the State's evidence supports Hamm's conviction of sexual intercourse without consent.

## II

Did Hamm knowingly, voluntarily, and intelligently waive his right to testify at trial?

Defendant contends that he did not knowingly or voluntarily waive his right to testify in his own behalf, and that this Court should require the trial court to inform defendants on-the-record of their right to testify.

The State contends that this Court should uphold the findings and conclusions of the trial court which found that Hamm knowingly and voluntarily waived his right to testify. First, we agree with the State and conclude that the testimony presented during the post-conviction hearing shows that Hamm voluntarily waived his right to testify after conferring with his attorney.

At the post-conviction hearing Hamm's attorney testified that

6

during a recess, prior to the close of the defendant's case-in-chief, he advised Hamm not to testify. Hamm's attorney was afraid Hamm would lose "his cool" on the witness stand and open the door for the prosecutor to bring in evidence of his prior rape conviction. Counsel based his decision on Hamm's testimony at his prior rape trial. Hamm's attorney represented Hamm in both rape cases. After conferring with his mother, Hamm agreed with counsel that Hamm should not testify. Hamm admitted he was not surprised when the defense rested and he made no indication to the court or his attorney that he wanted to take the stand.

Because Hamm had exercised his right to testify at his prior rape trial, conferred with his mother after his attorney advised him not to testify, and failed to notify the court of his desire to testify, we agree with the trial court and hold that Hamm knowingly and voluntarily waived his right to testify at trial.

Next, we agree that criminal defendants have a constitutional right to testify under Art. II, § 24, Mont. Const. (1972). State v. Johnson (1986), 221 Mont. 503, 515, 719 P.2d 1248, 1256. To protect this right the defense urges this Court to adopt the procedural safeguards of an on-the-record colloquy by the trial judge to assure the criminal defendant has voluntarily, knowingly, and intentionally waived his right to testify. People v. Curtis (Colo. 1984), 681 P.2d 504, 515.

The State argues that this Court should adopt the majority position of United States v. Martinez (9th Cir. 1989), 883 F.2d 750, 760. In Martinez, the court stated:

> All circuit courts reaching the question have held that courts have no affirmative duty sua sponte to address a silent defendant and inquire whether he knowingly and intelligently waives the right to testify.
>
> By far the majority of states that have considered the question also have held that courts have no duty sua sponte to advise the defendant of his right to testify and establish on-the-record that this right was waived knowingly and intelligently. Waiver of this right is presumed from the defendant's failure to testify or notify the court of his desire to do so.
>
> At least seven reasons have been given for this conclusion: First, the right to testify is seen as the kind of right that must be asserted in order to be recognized. Second, it is important that the decision to testify be made at the time of trial and that the failure to testify not be raised as an afterthought after conviction. Third, by advising the defendant of his right to testify, the court could influence the defendant to waive his right not to testify, "thus threatening the exercise of this other, converse, constitutionally explicit and more fragile right." Fourth, a court so advising a defendant might improperly intrude on the attorney-client relation, protected by the Sixth Amendment. Fifth, there is danger that the judge's admonition would introduce error into the trial. Sixth, it is hard to say when the judge should appropriately advise the defendant --- the judge does not know the defendant is not testifying until the defense rests, not an opportune moment to conduct a colloquy. Seventh, the judge should not interfere with defense strategy.
>
> For all these convergent reasons we join other circuits and the majority of states in concluding that the court has no duty to advise the defendant of his right to testify, nor is the court required to ensure that an on-the-record waiver has occurred. [Citations omitted.]

Martinez, 833 F.2d at 760.

The defense also relies on Boyd v. United States (D.C.App. 1991), 586 A.2d 670. In Boyd, the court criticized the Martinez decision; however, it did not require that the trial court conduct an on-the-record inquiry to determine if the defendant knowingly and intelligently waived his right to testify. Boyd, 586 A.2d at

8

678.

We adopt the foregoing analysis of the _Martinez_ court and conclude that the District Court had no duty to inform Hamm of his right to testify or receive an on-the-record waiver. We also conclude that Hamm waived this right by failing to testify and failing to notify the court that he wished to testify. Therefore we hold that the District Court correctly found that Hamm knowingly and voluntarily waived his right to testify.

## III

Did the defendant receive effective assistance of counsel?

Hamm contends that his defense counsel failed to adequately prepare for trial, failed to interview the State's witnesses, failed to propose certain jury instructions, failed to investigate the reputation and character of the victim, and failed to call Hamm to testify on his own behalf.

The State argues that under State v. Kolberg (1990), 241 Mont. 105, 109, 785 P.2d 702, 704, Hamm received effective assistance of counsel. In _Kolberg_ we stated:

> Ineffective assistance of counsel requires specific acts or omissions which prejudice defendant's case and result in the denial of a _fair trial_ . . . First the defendant must show that counsel's performance was _deficient_. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance _prejudiced_ the defense. . . . To show prejudice, a defendant must show that, but for counsel's unprofessional errors, there was reasonable probability that the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. (Emphasis added.) (Citations omitted.)

<u>Kolberg</u>, 241 Mont. at 109, 785 P.2d at 704.

Evidence presented at the post-conviction hearings showed that Hamm's attorney met with Hamm several times prior to trial, interviewed or obtained statements from all of the prosecution's witnesses, including the victim, and presented four witnesses for the defense at the trial. Additionally, our review of the trial transcript demonstrates that Hamm's attorney elicited favorable evidence from D.B. during an extensive cross examination of the victim. Finally, as previously discussed, counsel presented strategic reasons for advising Hamm not to testify.

Hamm did not offer evidence that his attorney's preparation for trial or presentation of Hamm's defense was deficient. Further Hamm fails to show prejudice to his defense or that counsel's actions deprived him of a fair trial. We agree with the District Court and hold that Hamm received effective assistance of counsel.

IV

Was it error for the District Court to sentence Hamm as a persistent felony offender?

Hamm's prior felony conviction arose from the rape of another victim, S.A. on February 7, 1989. Hamm was charged and subsequently convicted of this rape on August 17, 1989. On March 19, 1989, while out on bail for the rape of S.A., Hamm raped D.B. On January 17, 1990, the jury convicted Hamm of raping D.B. The court sentenced him as a persistent felony offender on February 20, 1990.

Defendant contends that § 46-18-501, MCA, the statute defining

a persistent felony offender, does not apply because although he raped S.A. prior to raping D.B., the prior felony conviction of August 17, 1989 occurred <u>after</u> the date he committed the present felony, March 19, 1989.

In defining the persistent felony offender, the statute provides that:

> A "persistent felony offender" is an offender who has previously been convicted of a felony and who is presently being sentenced for a second felony committed on a different occasion than the first. An offender is considered to have been previously convicted of a felony if:... less than 5 years have elapsed between the commission of the present offense and ... the previous felony conviction...

Section 46-18-501, MCA.

This Court rejected a similar argument by the defense in State v. Williamson (1985), 218 Mont. 242, 707 P.2d 530. In that case the defendant was sentenced as a persistent felony offender even though the second offense was committed prior to the first felony conviction. <u>Williamson</u> explains:

> [§ 46-18-501] simply requires a past conviction and a sentencing on a subsequent one... The prisoner argues that he has, under this statute, a sort of "window of opportunity." He can commit all manner of felonies between the time he commits his first felony and his conviction therefor and be immune from persistent felony designation because the five year clock doesn't start running until after the first conviction. There is no evidence in the statute, or any place else, that the legislature intended to provide such an open season.

<u>Williamson</u>, 218 Mont. at 246, 707 P.2d at 532-33.

Similarly, in this case we conclude that Hamm falls squarely within the persistent felony offender statute. First the statute requires that the offender have a previous felony conviction and

11

that the offender is currently being sentenced for a second felony. In this case, Hamm meets both requirements because he was convicted of raping S.A. August 17, 1989, prior to his February 20, 1990 sentencing in the current proceeding.

Next, the statute requires that the defendant commit the prior felony and the current felony for which he is being sentenced on a different occasion. In this case the offenses occurred on different occasions. The rapes occurred six weeks apart and involved different victims.

Finally, the statute requires that the commission of the present offense be within five years of the previous felony conviction. In this case Hamm committed the present offense on March 19, 1989. On August 17, 1989 he was convicted of the prior felony. March 19, 1989 to August 17, 1989 is clearly within the five year statutory period. We hold that the court acted properly when it sentenced Hamm as a persistent felony offender.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

12