FILED

03/10/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0012

DA 25-0012

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 51N

STATE OF MONTANA,

  Plaintiff and Appellee,

 v.

CHRISTOPHER PAUL ROOPE,

  Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADC 2023-490
Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

  For Appellant:

  James C. Murnion, Murnion Law, Missoula, Montana

  For Appellee:

  Austin Knudsen, Montana Attorney General, Christine Hutchison, Assistant Attorney General, Helena, Montana

  Kevin Downs, Lewis and Clark County Attorney, Fallon Stanton, Dan Baris, Deputy County Attorneys, Helena, Montana

    Submitted on Briefs: January 28, 2026

    Decided: March 10, 2026

Filed:

      _____
          Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Christopher Paul Roope appeals the November 8, 2024 Judgment and Commitment of the First Judicial District Court, Lewis and Clark County, entered after he was convicted in a jury trial of seven counts of Partner or Family Member Assault (PFMA), two counts of Tampering with Witnesses or Informants, Strangulation of a Partner or Family Member, Solicitation of Tampering with or Fabricating Physical Evidence, and Bail Jumping, all felonies. Except for Bail Jumping, the charges arose from Roope's interactions with his former wife, L.R. Roope argues he received ineffective assistance of trial counsel (IAC) and that the District Court committed plain error by inferring from his silence and from his counsel's statement resting the defense that he was waiving his right to testify in his own defense. We affirm Roope's convictions without prejudice to Roope's right to pursue postconviction relief.

¶3 At trial, during the State's case-in-chief, the State called L.R., the subject of the PFMA charges, Detective Metcalf, Deputy Sheriff Gilbertson, and Deputy Sheriff Galahan, in addition to other witnesses. L.R. testified that she originally met Roope on TikTok and that he continued to communicate with other women on TikTok after they were married. L.R. described an incident on January 22, 2024, which gave rise to one of the

2

PFMA charges and the strangulation charge against Roope. While L.R. and Roope were lying in bed, she noticed that he was texting another woman on TikTok. L.R. grabbed or swatted the phone from his hand, and said, "Would you quit texting that [expletive] whore while you're lying next to me in bed." A physical struggle followed, including pushing and shoving by both parties, wherein L.R. sustained significant bruising, rug burns, a mouth injury, a scalp laceration, and strangulation to the extent that she lost control of her bladder. Detective Metcalf testified on direct examination that loss of bladder or bowel control during strangulation typically indicates the victim lost consciousness and faced the risk of death.

¶4 On cross-examination of L.R., Roope's trial counsel inquired about an earlier incident between Roope and L.R. that occurred in July or August 2022, involving a camper. In response, L.R. explained that following a fight with Roope, she stayed in a camper to get away from him. Trial counsel asked, "And you had told Detective Metcalf that [Roope] just started hitting you; is that correct?" to which she replied affirmatively. Trial counsel then asked: "And that you were in the camper when he hit you?" After L.R. twice answered and stated that Roope "never hit me in the camper," trial counsel acknowledged an error with his question, stating, "All right. That was my mistake reading. I can't read my own writing. I'm sorry," before resuming questioning L.R. about the details of that incident.

¶5 Thereafter, Detective Metcalf testified on direct that the County Attorney had told her that L.R. and Roope had a "domestic violence related relationship," and explained what L.R. had told Metcalf about the July or August 2022 camper incident, which the District Court permitted over trial counsel's hearsay objection. Also, Deputy Gilbertson and

3

Deputy Galahan, who had been involved in one of the PFMA investigations, both testified about an alleged incident on August 9, 2023, about which they opined had likely involved physical violence. However, neither deputy had personally observed any altercation or produced evidence of a physical attack, and L.R. and Roope both denied any physical confrontation occurred on that date. After the State rested its case-in-chief, Roope's trial counsel, in response to the District Court's inquiry, rested the defense without calling any witnesses.

¶6 Roope contends that his trial counsel rendered IAC by going beyond the State's direct examination of L.R. and eliciting damaging testimony about the July or August 2022 camper incident, noting that counsel conceded the "mistake" on the record, which allowed the State to later elicit from Detective Metcalf what L.R. had said about the incident over trial counsel's objection. The District Court admitted the evidence on the ground the statements from Detective Metcalf were "prior and consistent" to statements made by L.R. that trial counsel had elicited.[1] Roope also contends trial counsel was ineffective for: (1) failing to raise or develop a justifiable use of force defense for the January 22, 2024 incident, given L.R.'s testimony that she initiated physical contact by grabbing or swatting the phone from Roope's hand; (2) failing to object to testimony by Deputy Sheriff Gilbertson and Deputy Sheriff Galahan about the alleged August 9, 2023 incident, despite

---

[1] The State suggests that the trial transcript may contain an error and should indicate that the prosecutor responded to trial counsel's hearsay objection by characterizing the statements as "prior inconsistent" rather than "prior and consistent" statements. However, as clarified in Roope's reply brief, this IAC claim is premised upon trial counsel's decision to elicit testimony from L.R. about the July or August 2022 camper incident at all, and thus, the precise basis for the District Court's overruling of the objection need not be resolved here.

the absence of personal observations by the deputies, and L.R. and Roope's denial of a physical confrontation; (3) failing to object to hearsay testimony from Detective Metcalf about what the County Attorney had told her; and finally, (4) preventing him from testifying in his own defense. Roope also argues the cumulative effect of these alleged errors deprived him of a fair trial. Finally, he contends the District Court committed plain error by inferring a waiver of his right to testify based on his silence and his counsel's resting of the defense.

¶7      "Only record-based ineffective assistance of counsel claims are considered on direct appeal." *State v. Aker*, 2013 MT 253, ¶ 22, 371 Mont. 491, 310 P.3d 506 (citation omitted). While a failure to object itself is record-based, and could be reviewed on appeal, *State v. White*, 2001 MT 149, ¶ 15, 306 Mont. 58, 30 P.3d 340, "if the record does not 'fully explain' why the attorney failed to object, the matter 'is best suited for post-conviction proceedings.'" *Aker*, ¶ 35 (citation omitted). "[D]ecisions regarding the timing and number of objections lie within counsel's tactical discretion, which would indicate that non-record based information explaining the tactic may be involved." *White*, ¶ 16 (citation omitted). Thus, if the record fails to answer the question "why" counsel did or did not take the actions constituting the alleged ineffective assistance, the claims are better raised by a petition for postconviction relief where the record can be more fully developed. *White*, ¶ 20. "Criminal defendants have a constitutional right to testify under Art. II, § 24, Mont. Const." *State v. Hamm*, 250 Mont. 123, 128, 818 P.2d 830, 833 (1991), *overruled in part on unrelated grounds by State v. Running Wolf*, 2020 MT 24, ¶ 29, 398 Mont. 403, 457 P.3d 218. Here, the record is silent as to the reasons "why" trial counsel pursued the course of

5

actions at trial to which Roope objects, including the line of questioning with L.R. regarding the July or August 2022 camper incident, not pursuing a justifiable use of force defense, failing to object to allegedly speculative testimony from Deputy Gilbertson and Deputy Galahan, and failing to object to allegedly hearsay statements from Detective Metcalf about what the County Attorney had told her. While trial counsel acknowledged a "mistake" during cross-examination of L.R. about the camper incident, that admission was to a single question, whereas Roope is more broadly challenging the entire line of inquiry as ineffective. Because the reasons for counsel's various choices and actions are not explained on the record, these IAC claims are "best suited" for postconviction proceedings, where counsel may be afforded the opportunity to explain the challenged decisions. *Aker*, ¶ 35.

¶8  Roope's IAC argument regarding his failure to testify overlaps with his request for plain error review of the District Court's asserted error of inferring from his silence and trial counsel's resting of the defense that he was waiving his right to testify. Relevant to both issues, Roope's briefing states, "[a]dmittedly, the record is silent as to why Roope's trial lawyer did not call him as a witness." He acknowledges there was no objection made at trial and that plain error review would be required to address the waiver issue.[2] However,

---

[2] "The party requesting reversal because of plain error bears the burden of firmly convincing this Court that the claimed error implicates a fundamental right and that such review is necessary to prevent a manifest miscarriage of justice or that failure to review the claim may leave unsettled the question of fundamental fairness of the proceedings or may compromise the integrity of the judicial process." *State v. George*, 2020 MT 56, ¶ 5, 399 Mont. 173, 459 P.3d 854 (citation omitted). We may "review and correct an unpreserved assertion of error upon a showing of: (1) a plain or obvious error; (2) that affected a constitutional or other substantial right; and (3) which prejudicially affected the fundamental fairness or integrity of the proceeding." *State v. Abel*, 2021 MT 293, ¶ 4, 406 Mont. 250, 498 P.3d 199.

the contention repeated in his briefing is that trial counsel "unilaterally prevented him from testifying in his own defense," and he argues that an "ineffective trial lawyer unilaterally preventing him from testifying demonstrates why this Court should not accept a defendant's mere silence as sufficient proof of a valid waiver." In sum, Roope contends there was no plausible justification for his counsel's denial of his right, and that the District Court should have ferreted out that Roope wanted to testify, or at least inquired further about the issue after his trial counsel rested, to ensure he did not. The issue later surfaced during sentencing, when Roope explained that the decision whether he should testify was discussed multiple times with counsel, who "would constantly say, the Judge will laugh you out of court. And I tended to believe her." Roope added, "I was not able to speak on my own behalf during the trial. Because of this, I do not feel my story was heard." However, there is nothing of record that would verify that trial counsel actually prevented or forbade Roope from testifying, such that his "not being able to speak" was forced against his will, as opposed to being a difficult strategic decision made with counsel's advice.

¶9 After surveying the analytical approaches to this issue, we explained in *State v. Abel* that "the constitutional requirement for a knowing, voluntary, and intelligent waiver of the right to testify . . . neither necessarily requires the trial court to explicitly advise defendants of their right to testify, nor necessarily requires a record inquiry and determination as to whether he or she knowingly, voluntarily, and intelligently waived that right." *State v. Abel*, 2021 MT 293, ¶ 7, 406 Mont. 250, 498 P.3d 199. While such procedures are not necessarily required, a clarifying question by the district court at the point the defense rests about whether the defendant understands his right to testify would not be inappropriate.

7

Roope acknowledges our precedent requiring no such inquiry and thus asks the Court to adopt a new rule requiring additional process, but in a case that alleges an affirmative prevention of the right by counsel, there is no certainty that an additional inquiry by the District Court would even have been beneficial. We thus conclude that, because the reasons for trial counsel's actions regarding calling Roope as a witness are not apparent from the record, this claim is better suited for postconviction relief where counsel may explain the challenged actions. *White*, ¶ 20. Similarly, the record does not contain a plain or obvious error affecting a constitutional right for which we must exercise plain error review to preserve the fundamental fairness of the proceeding. *Abel*, ¶ 4. Roope retains his postconviction remedy.

¶10 Regarding Roope's claim that the cumulative effect of trial counsel's alleged deficiencies prejudiced him, we note that, as explained above, none of the ineffective assistance of counsel claims can be resolved on direct appeal. We therefore decline to address Roope's cumulative error argument.

¶11 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. Although a portion of Roope's appeal discusses his constitutional right to testify on his own behalf, this appeal presents no violation of a constitutional right capable of resolution, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶12 Affirmed.

/S/ JIM RICE

8

We Concur:


/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON