Michael D. JOHNSON, Appellant,

v.

The STATE of Texas.

No. PD–1623–03.

Court of Criminal Appeals of Texas.

May 25, 2005.

Rehearing Denied Aug. 13, 2005.

Paul E. Mansur, Denver City, for appellant.

William C. Sowder, DA, Lubbock, Matthew Paul, State's Attorney, Austin, for state

## OPINION

KELLER, P.J., delivered the opinion of the Court in which MEYERS, HERVEY, HOLCOMB and COCHRAN, JJ., joined.

When defense counsel's conduct deprives a defendant of his constitutional right to testify, is that deprivation subject to an analysis of harm or prejudice, and if so, what standard should be used? We hold that this type of claim is properly characterized as one of ineffective assistance of counsel and that the usual analysis of prejudice under *Strickland v. Washington*[1] applies.

## I. BACKGROUND

### A. Trial

Appellant was charged with committing aggravated assault.[2] At trial, the evidence showed that he and his girlfriend, Yasminda Robinson, had been drinking alcoholic beverages during a birthday party at a friend's house.

Robinson testified to the following events: Appellant insisted on driving her and her four-year-old son home, but during the trip, Robinson became concerned that appellant was intoxicated and asked to be returned to her friend's house. Appellant refused, asserting that Robinson was drunk and should not be driving. In an attempt to get away from appellant, Robinson grabbed the steering wheel with the intent to "get his attention or flip the car and get out." A fight ensued, in which they each hit the other. Appellant stopped the car, and Robinson got out of the vehicle. Robinson tried to get her son out of the back seat, but before she could do so appellant shoved her and she fell to the ground. Appellant then straddled her; when she started screaming he choked her with his hands. Robinson "almost passed out" on two occasions. Appellant released Robinson after her son got out of the vehicle. Robinson tried to appease appellant by acting apologetic. The three of them returned to the car and continued on toward Robinson's apartment. Robinson asked appellant to stop at a Town and Country convenience store so that she

---

1. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

2. He was also charged with a community supervision violation arising out of this incident. The trial court revoked his community supervision the day after the jury convicted appellant of aggravated assault.

could use the restroom. While there, she handed to an employee of the store a note stating that appellant was trying to kill her and asking for help. The note also contained Robinson's name, address, and telephone number.

The store clerk called the police, and appellant was subsequently arrested outside of Robinson's apartment. Officer David Paulk noticed that Robinson had a large, deep scratch on one of her arms and light choking marks on her neck.

Upon his arrest, appellant was placed into Officer Paulk's patrol car. While there, he and the officer had a conversation that was electronically recorded. During this conversation appellant denied ever going to the Town and Country store that day. This statement, and all other conversation occurring in the patrol car, was suppressed by the trial court because Officer Paulk had failed to give *Miranda*[3] warnings.

The evidence at trial included letters and electronically recorded telephone calls from appellant to the victim while appellant was in jail. During these communications, appellant made comments regarding what happened during the incident. Sometimes appellant stated that he had not tried to hurt the victim. Other times appellant admitted that he behaved badly, including grabbing Robinson in the wrong way and putting his hands on her in the wrong way. He apologized numerous times for his behavior. During these communications appellant also attempted to persuade the victim to drop the charges, plead the Fifth Amendment, or change her story. He claimed that if she did what he

said, appellant could file a false imprisonment lawsuit, and he and the victim would both get plenty of money. In addition, during one of the recorded conversations, appellant admitted that Robinson would not be telling the truth if she followed his instructions.[4]

The State also introduced the judgment of conviction for a prior assault on a different woman to satisfy the "prior conviction" element of one of the legal theories contained in the indictment.[5]

Appellant was convicted. At the punishment stage, the prosecution introduced evidence that appellant had two prior felony convictions. The jury sentenced appellant to fourteen years in prison.

### B. Hearing on motion for new trial

At the hearing on the motion for new trial, appellant claimed that his trial counsel deprived him of his constitutional right to testify. Appellant told his attorney several times that he wanted to testify to give his side of the story, but counsel replied, "Your priors will kill you." Appellant stated that he was unaware that he had the final authority to make the decision on whether to testify and that his attorney failed to so inform him. Appellant further stated that, had he known that he could testify against counsel's wishes, he would have done so.

Appellant stated that he would have testified to the following at trial: Robinson was the aggressor in their fight. She was drunk, and she mistakenly believed that he was seeing another woman. She nearly

---

**3.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**4.** This last statement was not contained in the conversations played before the jury but was contained in State's exhibit number seven (compact disc), which was later admitted into

evidence in its entirety. During deliberations, the jury asked that some of the recorded conversations be played but did not ask for this particular conversation to be played.

**5.** *See* TEX. PEN. CODE § 22.01(b)(2)(assault on member of household).

succeeded in wrecking the car. She beat appellant with her fists and a stick, and she clawed at and scratched his face. Appellant did not choke her, but pushed her back while looking away with his eyes closed to prevent her from scratching him more. While he was pushing her back, she made a gagging sound, and he let go of her.[6] The State cross-examined appellant regarding the nature of the stick he claimed the victim used, and in response to questioning, appellant claimed it was a tree branch.

Trial counsel testified that he was against appellant testifying at trial and told him so. Counsel further stated that he did not specifically tell appellant that he could testify against counsel's wishes because counsel assumed appellant already knew that.

Regarding appellant's story, trial counsel related that appellant told him that Robinson was drunk, that she was mad about finding a cell phone, that she started hitting him, and that he was defending himself. Counsel also remembered appellant saying that Robinson got out of the car and fell, but counsel could not remember the entire story. Counsel did recall that the version of events appellant *had related to counsel* was "pretty close" to the version given by the victim at trial. Counsel was surprised that the victim's "testimony came out like it did."

Evidence at the motion for new trial hearing also showed that appellant's prior assault conviction involved a choking assault against the mother of his child.

The trial court denied the motion for new trial.

## C. Court of appeals opinion

On appeal, appellant contended that he was improperly denied the right to testify. The court of appeals analyzed the claim as an ineffective assistance of counsel claim under *Strickland*.[7] The court concluded that counsel's performance was deficient because his conduct deprived appellant of his right to testify.[8] However, the court of appeals held that appellant failed to show prejudice. In support of this holding, the appellate court offered two main reasons. First, it found that the jury heard at least part of appellant's version of the incident.[9] The appellate court referred to a compact disc containing the recorded telephone conversations admitted into evidence at trial. Second, the court found that appellant's opportunity to testify "would have come at a price."[10] Appellant would have been impeached with his two prior felony convictions and he would have risked causing the admission of the details of his prior assault conviction.[11] Further, he would have been cross-examined about his prior denial of being at the scene and about damaging statements made in the recorded telephone conversations.[12] The court of appeals concluded that there was not a reasonable probability that the result of

---

**6.** We note that the motion for new trial hearing was the first time any evidence was introduced that the victim used a stick during the altercation.

**7.** *Johnson v. State*, 120 S.W.3d 10, 15–16 (Tex.App.-Amarillo 2003).

**8.** *Id.* at 17–18. The State did not file a petition for discretionary review from this holding, and we express no opinion on the matter.

**9.** *Id.* at 19.

**10.** *Id.*

**11.** *Id.*

**12.** *Id.*

appellant's trial would have been different.[13]

### D. Appellant's contentions

Appellant presented the following grounds in his petition:

(1) What is the appropriate standard that courts must utilize in reviewing a violation of a defendant's right to testify when the violation occurs through actions of defense counsel?

(2) Did the court of appeals misapply *Strickland's* prejudice analysis contrary to controlling United States Supreme Court decisions?

Appellant contends that a denial of the defendant's right to testify—from whatever source—is "structural" error, requiring automatic reversal without conducting any sort of harm analysis. Second, he argues for the application of the harm standard articulated in *Chapman v. California*: that the error is reversible unless found to be harmless beyond a reasonable doubt.[14] As a final optional position, appellant contends that the error is reversible under *Strickland*. Under this final option, appellant argues for the more limited prejudice inquiry conducted by the Supreme Court in cases that involve involuntary pleas and denial of appeal: whether, absent counsel's misconduct, the defendant would have availed himself of the right in question—in this case, whether the defendant would in fact have testified. Appellant also contends that the court of appeals "failed to take into consideration the unique nature of a defendant's testimony and its particular effect on the prejudice component."

### II. ANALYSIS

#### A. Overview

The appropriate standard of harm or prejudice depends upon the answers to two questions: First, is the deprivation of a defendant's right to testify, *caused by defense counsel,* an error that is properly attributable to the trial court? Second, is the deprivation of a defendant's right to testify the kind of violation that is properly characterized as a "structural" defect? The possible answers to these two questions produce four distinct positions on how to handle this type of claim. (1) If the answer to both questions is "yes" (attributable to the trial court and a structural defect), then the deprivation is constitutional error of the "structural" variety and no analysis of harm or prejudice is conducted. (2) If the answer to the first question is "yes"(attributable to the trial court) but the answer to the second question is "no" (not a structural defect), then the deprivation is constitutional error subject to the usual standard of harm articulated in *Chapman v. California,* which calls for reversal unless the error is determined to be harmless beyond a reasonable doubt. (3) If the answer to the first question is "no" (not attributable to the trial court) but the answer to the second question is "yes" (a structural defect), then the deprivation is attorney error analyzed as ineffective assistance of counsel under *Strickland,* but with a more limited prejudice inquiry than is normally conducted. (4) If the answer to both questions is "no" (not attributable to the trial court and not a structural defect), then the deprivation is attorney error analyzed as an ineffective assistance of counsel question under the usual *Strickland* analysis. We find that the answers to the two questions are "no" and hold that the usual *Strickland* analysis applies.

#### B. Whose error is it anyway?

 Ordinarily, a conviction is not overturned unless the trial court makes a

---

**13.** *Id.*

**14.** 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

mistake.[15] There are just a few situations in which a conviction can be overturned even though the trial court has done nothing wrong. Misconduct by the prosecutor, alone, can be grounds for such an occurrence if perjured testimony is knowingly used,[16] exculpatory evidence is suppressed,[17] or the prosecutor has a conflict of interest requiring recusal.[18] Defense counsel can provoke such an occurrence by being unqualified,[19] having a conflict of interest,[20] failing to act on behalf of the defendant in any meaningful way,[21] or by committing errors that prejudice the defendant.[22]

These limited situations all share a common element: ordinarily, neither the trial court nor the defendant has any control over the events. The use of perjured testimony and the suppression of exculpatory evidence cannot always be corrected by the trial court or objected to by the defendant because, often, neither is in a position to know about the wrongdoing at the time it occurs. A prosecutor's refusal to recuse himself from the case cannot be corrected because the trial court has no authority to force a recusal.[23] And a deficiency in defense counsel's qualifications or representation ordinarily cannot be corrected by the trial court or the defendant because defense counsel is the very person charged with safeguarding the defendant's interests.

■ Whether a harm analysis can be applied to these types of nonjudicial misconduct depends upon whether the misconduct amounts to a complete denial of counsel. If, in essence, the defendant has been completely denied counsel, then a harm analysis does not apply.[24] So a harm analysis is not conducted when a defense attorney entirely fails to subject the prosecution's case to adversarial testing,[25] when the so-called attorney is an unlicensed layman masquerading as an attorney,[26] or when the attorney has been disciplined by the State Bar and "the reasons for the discipline imposed reflect so poorly upon the attorney's competence that it may reasonably be inferred that the attorney was incompetent to represent the defendant in the proceeding in question." [27]

■ However, if the misconduct in question does not amount to the complete

---

**15.** In appellate parlance, trial court mistakes are referred to as "errors," *Hawkins v. State,* 135 S.W.3d 72, 76 (Tex.Crim.App.2004), which may be reversible, depending on the applicable harm analysis (if any). *Id.; see* Tex.R.App. P. 44.2; *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1985).

**16.** *United States v. Bagley,* 473 U.S. 667, 679, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); *Ex parte Fierro,* 934 S.W.2d 370 (Tex.Crim.App. 1996).

**17.** *Bagley,* 473 U.S. at 674–678, 105 S.Ct. 3375; *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

**18.** *State ex rel. Eidson v. Edwards,* 793 S.W.2d 1, 6 (Tex.Crim.App.1990).

**19.** *Cantu v. State,* 930 S.W.2d 594 (Tex.Crim. App.1996).

**20.** *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980).

**21.** *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984)("if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing").

**22.** *Strickland, supra.*

**23.** *Edwards,* 793 S.W.2d at 6.

**24.** *Cronic,* 466 U.S. at 659, 104 S.Ct. 2039; *Cantu,* 930 S.W.2d at 596.

**25.** *Cronic, supra.*

**26.** *Cantu,* 930 S.W.2d at 596, 602.

**27.** *Id.* at 602.

denial of counsel, then some standard of harm, variously phrased as "prejudice" or "materiality," is required to establish a constitutional violation leading to reversal of the conviction. For the "knowing use of perjured testimony," the harm standard is whether there is a "reasonable likelihood that the false testimony could have affected the judgment of the jury"[28]—also held to be the same as *Chapman's* "beyond a reasonable doubt" standard.[29] For misconduct involving a prosecutor's failure to recuse himself due to a conflict of interest created by dual roles as advocate and witness, the standard is whether the defendant has suffered actual prejudice.[30] And suppression of exculpatory evidence and ineffective assistance of counsel claims are governed by the *Strickland* materiality/prejudice standard: whether "there is a reasonable probability that ... the result of the proceeding would have been different."[31]

*Strickland* prescribes the usual standard for evaluating misconduct claims flowing from the conduct of defense counsel.[32] Besides the complete denial of counsel, there are only two situations excepted from the straightforward application of *Strickland's* requirements to defense counsel misconduct: (1) a conflict of interest and (2) deficient performance regarding a right the violation of which would constitute a structural defect.

■ Conflict of interest claims involving defense counsel are not analyzed under *Strickland* and are subject to a very limited harm analysis: the defendant must demonstrate "that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'"[33] Once that predicate for a conflict of interest claim is shown, no further showing of prejudice is required, at least in part because a conflict of interest affects the entire representation.[34] We have applied this rule to prosecutorial misconduct involving a conflict of interest when the conflict derives from the prosecutor's prior service as defense counsel in the same case.[35]

**28.** *Bagley,* 473 U.S. at 678, 105 S.Ct. 3375.

**29.** *Id.* at 679 n. 9, 105 S.Ct. 3375.

**30.** *House v. State,* 947 S.W.2d 251, 253 (Tex. Crim.App.1997).

**31.** *Bagley,* 473 U.S. at 682, 105 S.Ct. 3375.

**32.** *Cronic,* 466 U.S. at 659 n. 25, 104 S.Ct. 2039.

**33.** *Strickland,* 466 U.S. at 692, 104 S.Ct. 2052 (quoting *Cuyler,* 446 U.S. at 350, 348, 100 S.Ct. 1708). The Supreme Court noted that the conflict of interest rule was "not quite the per se rule of prejudice that exists" for the denial of counsel altogether. *Id.*

**34.** *See Strickland,* 466 U.S. at 696, 104 S.Ct. 2052 ("In those circumstances, counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties. Moreover, it is difficult to measure the precise effect on the defense of representation corrupted by conflicting interests"); *Cuyler,* 446 U.S. at 349, 100 S.Ct. 1708 ("the conflict itself demonstrated a denial of the 'right to have the effective assistance of counsel'"); *Holloway v. Arkansas,* 435 U.S. 475, 489–491, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978)("The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters"); *Glasser v. United States,* 315 U.S. 60, 75–76, 62 S.Ct. 457, 86 L.Ed. 680 (1942)("To determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment of Stewart as counsel for Kretske is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial").

**35.** *Ex parte Spain,* 589 S.W.2d 132, 134 (Tex. Crim.App.1979).

While the Supreme Court does not use the *Strickland* standard in conflict of interest cases, it has analyzed deficient-performance/structural-defect claims within the *Strickland* framework, but with a more limited prejudice inquiry than is ordinarily conducted.[36] In *Hill v. Lockhart*, the defendant contended that his guilty plea was involuntary because his attorney gave him erroneous information.[37] The Supreme Court held that, to meet the prejudice prong of *Strickland*, a defendant in this situation must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty but would have insisted on going to trial." [38] In *Roe v. Flores–Ortega*, the defendant contended that counsel failed to consult with him about filing an appeal.[39] The Court held that, to show prejudice, a defendant in this situation must demonstrate "a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." [40] In both cases the defendant was required to show a reasonable probability that, absent counsel's errors, a particular proceeding would have occurred, but he was not required to show that the proceeding

would have resulted in a favorable outcome.[41] So, in the involuntary plea context, the defendant need not show that his case would have received a more favorable disposition had he gone to trial, and in the appeal context, he need not show that he would have received a favorable disposition on appeal.[42]

■ The key to this different standard of prejudice is that the deprivation of a trial and the deprivation of an appeal are both structural defects.[43] Comparing these deprivations to the denial of counsel at a critical stage, the Supreme Court has observed that these deprivations amounted to the "even more serious denial of the entire judicial proceeding itself" and "similarly demands a presumption of prejudice." [44] Had a trial or appellate court, in the face of a timely and proper request, arbitrarily denied the defendant one of these proceedings, the error would clearly be reversible without a showing of harm. In the ineffective assistance of counsel context, the narrowed prejudice inquiry is designed to ensure that the defendant would actually have availed himself of the proceeding in question, so that he really is in the same position as someone whose rights

36. *Hill v. Lockhart*, 474 U.S. 52, 56–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Roe v. Flores–Ortega*, 528 U.S. 470, 476–487, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000).

37. 474 U.S. at 56, 106 S.Ct. 366. The erroneous information concerned the application of parole law. *Id.*

38. *Id.* at 59, 106 S.Ct. 366. Due to its holding regarding the requirements of *Strickland's* prejudice prong in an involuntary plea case, the Supreme Court found "it unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel." *Id.* at 60, 106 S.Ct. 366.

39. 528 U.S. at 484, 120 S.Ct. 1029.

40. *Id.*

41. *Id.* at 483, 120 S.Ct. 1029.

42. *See id.* at 485–486, 120 S.Ct. 1029.

43. At least one state supreme court has recognized the relationship between errors exempted from a harm analysis on appeal and those presumed prejudicial in an ineffective assistance of counsel context. *Momon v. State*, 18 S.W.3d 152, 167 n. 17 (Tenn.1999), *reh'g granted in part*, 18 S.W.3d 152 (Tenn.2000)("a rule of presumed prejudice under the Sixth Amendment has the same practical effect as holding that denial of the right to testify under the Fifth Amendment defies harmless error analysis").

44. *Flores–Ortega*, 528 U.S. at 483, 120 S.Ct. 1029.

were denied by the trial court: "counsel's deficient performance must actually cause the forfeiture [of the proceeding in question]. If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have [availed himself of that proceeding], counsel's deficient performance has not deprived him of anything, and he is not entitled to relief."[45]

So, while the "structural" nature of a complained deprivation may impact the prejudice inquiry, *Strickland* still provides the basic framework when such deprivations flow solely from defense counsel. Except for the complete denial of counsel, only a *trial court's* commission of structural error can give rise to automatic reversal, with no harm analysis whatsoever. Although it is true that the right to testify is "fundamental" and personal to the defendant,[46] those characteristics do not distinguish it from the rights to trial and appeal,[47] to which the Supreme Court has applied the *Strickland* framework.[48]

Similarly, the above discussion shows that *Chapman's* "harmless beyond a reasonable doubt" standard is not appropriate for errors flowing solely from defense counsel. The Supreme Court has never applied *Chapman* to defense counsel mistakes and, in fact, has applied *Chapman* to only one type of nonjudicial impropriety (knowing use of perjured testimony), which is committed by the prosecution and is of an egregious character.

So, to avoid the requirements of *Strickland,* the defendant's complaint must reveal error attributable to the court and not simply to defense counsel. In the present context, for there to be an error attributable to the trial court, the trial court would have to have a duty to ensure, *sua sponte,* that the defendant understands his constitutional right to testify. A small minority of jurisdictions has held that there is such a duty[49] but most jurisdictions hold that there is not, at least where the defendant is represented by counsel and nothing has placed the trial court on notice that the defendant might want to testify.[50] Not surprisingly, jurisdictions that have im-

**45.** *Id.* at 484, 120 S.Ct. 1029 (bracketed material substituted for original: references to "appeal").

**46.** *Rock v. Arkansas,* 483 U.S. 44, 52, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

**47.** *Jones v. Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

**48.** *See Hill* and *Flores–Ortega, supra.*

**49.** *People v. Curtis,* 681 P.2d 504, 512 (Colo. 1984); *Tachibana v. State,* 79 Hawai'i 226, 234–236, 900 P.2d 1293, 1301–1303 (1995); *State v. Davis,* 309 S.C. 326, 422 S.E.2d 133, 146 (1992), *overruled on other grounds, Brightman v. State,* 336 S.C. 348, 520 S.E.2d 614, 616 n. 5 (1999); *Momon,* 18 S.W.3d at 162 (Tenn.2000); *State v. Salmons,* 203 W.Va. 561, 581–582, 509 S.E.2d 842, 862–863 (1998); *State v. Weed,* 263 Wis.2d 434, 462–464, 666 N.W.2d 485, 498–499 (2003).

**50.** The federal circuits are nearly unanimous in this regard: *Siciliano v. Vose,* 834 F.2d 29, 30 (1st Cir.1987); *Brown v. Artuz,* 124 F.3d 73, 79 (2nd Cir.1997), *cert. denied,* 522 U.S. 1128, 118 S.Ct. 1077, 140 L.Ed.2d 135 (1998); *United States v. Leggett,* 162 F.3d 237, 246–248 (3rd Cir.1998), *cert. denied,* 528 U.S. 868, 120 S.Ct. 167, 145 L.Ed.2d 141 (1999); *United States v. McMeans,* 927 F.2d 162, 163 (4th Cir.1991); *United States v. Brown,* 217 F.3d 247, 258 (5th Cir.), *cert. denied,* 531 U.S. 973, 121 S.Ct. 415, 148 L.Ed.2d 321 (2000); *United States v. Webber,* 208 F.3d 545, 551 (6th Cir.), *cert. denied,* 531 U.S. 882, 121 S.Ct. 197, 148 L.Ed.2d 137 (2000); *Underwood v. Clark,* 939 F.2d 473, 476 (7th Cir.1991); *United States v. Pino–Noriega,* 189 F.3d 1089, 1094–1095 (9th Cir.), *cert. denied,* 528 U.S. 989, 120 S.Ct. 453, 145 L.Ed.2d 369 (1999); *United States v. Janoe,* 720 F.2d 1156, 1161 (10th Cir.1983), *cert. denied,* 465 U.S. 1036, 104 S.Ct. 1310, 79 L.Ed.2d 707 (1984); *United States v. Van De Walker,* 141 F.3d 1451, 1452 (11th Cir.), *cert. denied,* 525 U.S. 912, 119 S.Ct. 257, 142 L.Ed.2d 211 (1998); *United States v. Ortiz,* 82 F.3d 1066, 1071–1072 (D.C.Cir.1996); *see also United States v. Beli-*

posed a *Chapman* harm analysis tend to be the same jurisdictions that impose a duty upon the trial court[51] or at least strongly suggest that the trial court conduct its own inquiry.[52]

Two basic rationales are given for imposing on the trial court a duty to ensure a knowing waiver of the right to testify. Colorado, South Carolina, and Wisconsin analogize the "right to testify" to "the right to counsel" or to the "right to a jury trial" and hold that the procedural safeguards in *Johnson v. Zerbst*[53] must apply to the relinquishment of the former as well

*zaire*, 24 M.J. 183, 184–185 (C.M.A.1987). Most state courts of last resort have followed suit. *State v. Gulbrandson*, 184 Ariz. 46, 65, 906 P.2d 579, 598 (1995); *Bader v. State*, 344 Ark. 241, 248–249, 40 S.W.3d 738, 743–744, *cert. denied*, 534 U.S. 826, 122 S.Ct. 66, 151 L.Ed.2d 33 (2001)(finding procedural default); *People v. Bradford*, 14 Cal.4th 1005, 1052–1053, 60 Cal.Rptr.2d 225, 929 P.2d 544, 574, *cert. denied*, 522 U.S. 953, 118 S.Ct. 377, 139 L.Ed.2d 293 (1997); *State v. Paradise*, 213 Conn. 388, 404–405, 567 A.2d 1221, 1230 (1990); *Torres–Arboledo v. State*, 524 So.2d 403, 409–411 (Fla.), *cert. denied*, 488 U.S. 901, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988); *Burton v. State*, 263 Ga. 725, 728, 438 S.E.2d 83, 86 (1994); *Aragon v. State*, 114 Idaho 758, 763, 760 P.2d 1174, 1179 (1988); *People v. Smith*, 176 Ill.2d 217, 234–235, 223 Ill.Dec. 558, 680 N.E.2d 291, 302–303, *cert. denied*, 522 U.S. 920, 118 S.Ct. 311, 139 L.Ed.2d 241 (1997); *Phillips v. State*, 673 N.E.2d 1200, 1202 (Ind.1996); *State v. Reynolds*, 670 N.W.2d 405, 411–413 (Iowa 2003); *Taylor v. State*, 252 Kan. 98, 105–106, 843 P.2d 682, 687–688 (1992); *Crawley v. Commonwealth*, 107 S.W.3d 197, 199 (Ky.2003); *State v. Hampton*, 818 So.2d 720, 729 (La.2002); *Morales v. State*, 325 Md. 330, 336, 600 A.2d 851, 853–854 (1992); *Commonwealth v. Waters*, 399 Mass. 708, 716–717, 506 N.E.2d 859, 865 (1987); *State v. Walen*, 563 N.W.2d 742, 751 (Minn.1997); *Shelton v. State*, 445 So.2d 844, 847 (Miss.1984); *State v. Hamm*, 250 Mont. 123, 818 P.2d 830, 833 (1991); *State v. El–Tabech*, 234 Neb. 831, 836, 453 N.W.2d 91, 95 (1990); *Phillips v. State*, 105 Nev. 631, 633, 782 P.2d 381, 382 (1989); *State v. Savage*, 120 N.J. 594, 629–630, 577 A.2d 455, 472–473 (1990); *State v. Jones*, 357 N.C. 409, 417, 584 S.E.2d 751, 756–757 (2003); *State v. Antoine*, 564 N.W.2d 637, 639 (N.D.1997); *State v. Bey*, 85 Ohio St.3d 487, 499–500, 709 N.E.2d 484, 497, *cert. denied*, 528 U.S. 1049, 120 S.Ct. 587, 145 L.Ed.2d 488 (1999); *Brennan v. Vose*, 764 A.2d 168, 171–172 (R.I. 2001); *Wilcox v. Leapley*, 488 N.W.2d 654, 658–659 (S.D.1992); *State v. Mumley*, 153 Vt.

304, 306, 571 A.2d 44, 45 (1989), *cert. denied*, 496 U.S. 939, 110 S.Ct. 3220, 110 L.Ed.2d 667 (1990); *State v. Thomas*, 128 Wash.2d 553, 558–559, 910 P.2d 475, 478–479 (1996); *Lobatos v. State*, 875 P.2d 716, 724 (1994).

 In several states where the court of last resort has not spoken on the matter, intermediate appellate courts have found no duty. *Hutcherson v. State*, 677 So.2d 1174, 1193–1194 (Ala.Crim.App.1994), *rev'd on other grounds*, 677 So.2d 1205 (1996); *People v. Simmons*, 140 Mich.App. 681, 684–685, 364 N.W.2d 783, 785, *appeal denied*, 422 Mich. 963 (1985); *State v. Duran* 105 N.M. 231, 233, 731 P.2d 374, 376 (Ct.App.1986); *People v. Dolan*, 2 A.D.3d 745, 746–747, 768 N.Y.S.2d 654, 654–655 (2nd Dept.2003), *appeal denied*, 2 N.Y.3d 798, 781 N.Y.S.2d 297, 814 N.E.2d 469 (2004); *State v. Brooks*, 833 P.2d 362, 364–365 (Utah App.1992).

**51.** *Tachibana*, 79 Hawai'i at 239–240, 900 P.2d at 1306–1307; *Momon*, 18 S.W.3d at 167–168. *See also State v. Hoffman*, 116 Idaho 689, 692, 778 P.2d 811, 814 (Ct.App.1989)(although trial court admonishment not mandatory, without admonishment, the record must reflect defendant's awareness of his right to testify; interpreting *Aragon* narrowly); *Id.* (citing *State v. Darbin*, 109 Idaho 516, 708 P.2d 921 (Ct.App.1985))(applying *Chapman* standard); *but see State v. Fields*, 127 Idaho 904, 912, 908 P.2d 1211, 1219, *cert. denied*, 516 U.S. 922, 116 S.Ct. 319, 133 L.Ed.2d 221 (1995)(reiterating *Aragon's* holding that trial court has no duty to advise defendant of right to testify).

**52.** *LaVigne v. State*, 812 P.2d 217, 222 (Alaska 1991)(recommending trial court inquiry); *Id.* at 220–221 (applying *Chapman* standard); *Sanchez v. State*, 841 P.2d 85, 89 (Wyo.1992)(recommending trial court inquiry); *Id.* at 88 (applying *Chapman* standard).

**53.** 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

as the latter two.[54] Hawaii, Tennessee, and West Virginia have imposed the duty as a prophylactic measure designed to protect the underlying constitutional right.[55] All three of the latter jurisdictions have recognized that the prophylactic rule imposed is not itself required by the federal constitution [56] and at least two of the three have declined to apply the rule retroactively—even to the parties in the case announcing the rule.[57] Colorado has similarly declined to apply its rule retroactively.[58] Interestingly, West Virginia assumes that a failure to comply with its rule is harmless if the defendant was represented by counsel and the record contains no evidence that counsel failed to inform the client of the right to testify, or that the defendant was coerced or misled into relinquishing that right.[59]

Jurisdictions that decline to impose upon the trial court a duty to ensure the defendant's understanding of the right to testify have articulated a variety of reasons for refusing to do so. Many courts have pointed out that the right to testify is counterpoised by the right not to testify and have held that a trial court admonishment about the former unduly risks interference with the latter—and that the right not to testify is the more fragile right, needing greater protection.[60] In this vein, some courts fear that a trial court admonishment would interfere with the attorney-client relationship and disrupt legitimate trial strategy.[61] In addition, many courts hold that advising the defendant of his right to testify is simply not the trial court's responsibility, but is the responsibility of defense counsel, and the trial court should be able to presume (absent evidence to the contrary) that counsel carried out that responsibility.[62] Some courts

**54.** *Curtis,* 681 P.2d at 511–512 (counsel); *State v. Orr,* 304 S.C. 185, 403 S.E.2d, 623, 624 (1991)(jury trial); *Weed,* 263 Wis.2d at 462, 666 N.W.2d at 498 (both).

**55.** *Tachibana,* 79 Hawai'i at 234, 900 P.2d at 1301; *Momon,* 18 S.W.3d at 162–163; *Salmons,* 203 W.Va. at 582, 509 S.E.2d at 863.

**56.** *Tachibana,* 79 Hawai'i at 236 n. 6, 900 P.2d at 1303 n. 6 (relying upon Hawaii constitution); *Momon,* 18 S.W.3d at 163 (procedure announced is a prophylactic rule that is not constitutionally required); *Salmons,* 203 W.Va. at 582, 509 S.E.2d at 863 (same).

**57.** *Tachibana,* 79 Hawai'i at 238, 238 n. 10, 900 P.2d at 1305, 1305 n. 10; *Momon,* 18 S.W.3d at 162–163.

**58.** *Curtis,* 681 P.2d at 516–517; *People v. Naranjo,* 840 P.2d 319, 322–323 (Colo.1992).

**59.** *Salmons,* 203 W.Va. at 582–583, 509 S.E.2d at 863–864.

**60.** *Siciliano,* 834 F.2d at 30; *United States v. Pennycooke,* 65 F.3d 9, 11 (3rd Cir.1995); *United States v. Martinez,* 883 F.2d 750, 756–757, 760 (9th Cir.1989), *vacated on other grounds,* 928 F.2d 1470 (9th Cir.1991); *Smith,* 176 Ill.2d at 235, 680 N.E.2d at 302; *Reynolds,* 670 N.W.2d at 412; *Taylor,* 252 Kan. at 106, 843 P.2d at 688; *Waters,* 399 Mass. at 716, 506 N.E.2d at 865; *Hamm,* 818 P.2d at 833; *Savage,* 120 N.J. at 629–630, 577 A.2d at 472–473; *Thomas,* 128 Wash.2d at 560, 910 P.2d at 479.

**61.** *Pennycooke,* 65 F.3d at 11; *Brown,* 217 F.3d at 258; *Underwood,* 939 F.2d at 476; *Martinez,* 883 F.2d at 757, 760; *Van De Walker,* 141 F.3d at 1452; *Fields,* 127 Idaho at 912, 908 P.2d at 1219; *Smith,* 176 Ill.2d at 235, 680 N.E.2d at 302–303; *Reynolds,* 670 N.W.2d at 412; *Hamm,* 818 P.2d at 833; *Wilcox,* 488 N.W.2d at 659; *Thomas,* 128 Wash.2d at 560, 910 P.2d at 479.

**62.** *Leggett,* 162 F.3d at 247; *Webber,* 208 F.3d at 551; *Martinez,* 883 F.2d at 757; *Van De Walker,* 141 F.3d at 1452; *Bradford,* 14 Cal.4th at 1053, 60 Cal.Rptr.2d 225, 929 P.2d at 574; *Burton,* 263 Ga. at 728, 438 S.E.2d at 86; *Phillips,* 673 N.E.2d at 1202; *Reynolds,* 670 N.W.2d at 412; *Morales,* 325 Md. at 336, 600 A.2d at 853–854; *Savage,* 120 N.J. at 630–631, 577 A.2d at 473; *Antoine,* 564 N.W.2d at 639; *Brennan,* 764 A.2d at 172; *Mumley,* 153 Vt. at 306, 571 A.2d at 45.

analogize the "right to testify" to the right of an accused to represent himself—a right the trial court is not ordinarily required to admonish a defendant about.[63] And some courts point out that the trial judge is not required to admonish a testifying defendant about the right not to testify, and therefore, should not be expected to admonish a non-testifying defendant about the converse right.[64]

██ We find the majority view persuasive. This Court has held that a trial court has no duty to inform a testifying defendant, represented by counsel, of his right not to testify.[65] If the trial court is not required to admonish a represented defendant about the right *not* to testify— arguably the "more fragile right"—then the trial court surely has no duty to do so with regard to the converse right *to* testify. We agree with the majority of jurisdictions that defense counsel shoulders the primary responsibility to inform the defendant of his right to testify, including the fact that the ultimate decision belongs to the defendant. Because imparting that information is defense counsel's responsibility, *Strickland* provides the appropriate framework for addressing an allegation that the defendant's right to testify was denied by defense counsel.[66]

## C. What kind of error is it?

That *Strickland* provides the appropriate framework is only half the question. As discussed above, how the prejudice prong is analyzed depends upon whether counsel's actions relate to a structural defect or to a mere "trial error." Essentially, we must determine whether deprivation of the underlying right (in this case the right to testify) would have been structural error if the trial court had caused the deprivation. In *Cain v. State* we held that "structural" errors were federal constitutional errors labeled by the United States Supreme Court as such.[67] In *Johnson v. United States*, the Supreme Court set forth its most recent list of structural errors: the total deprivation of counsel at trial, lack of an impartial trial judge, the unlawful exclusion of members of the defendant's race from a grand jury, the denial of the right to self-representation at trial, the denial of the right to a public trial, and an instruction that erroneously lowers the burden of proof for conviction below the "beyond a reasonable doubt" standard.[68] And, as discussed above, the Supreme Court described the total deprivation of a right to trial or appeal in terms that clearly equate to structural error al-

63. *Pennycooke*, 65 F.3d at 12, 12 n. 1; *Martinez*, 883 F.2d at 757–758; *Torres–Arboledo*, 524 So.2d at 410–411; *Thomas*, 128 Wash.2d at 559, 910 P.2d at 479.

64. *Brown*, 124 F.3d at 79; *Martinez*, 883 F.2d at 756–757; *Thomas*, 128 Wash.2d at 559, 910 P.2d at 479.

65. *Newell v. State*, 461 S.W.2d 403, 404 (Tex. Crim.App.1970); *see also Morgan v. State*, 688 S.W.2d 504, 521 n. 14 (Tex.Crim.App.1985).

66. *Brown*, 124 F.3d at 79; *Pennycooke*, 65 F.3d at 12; *Sexton v. French*, 163 F.3d 874, 882 (4th Cir.1998), *cert. denied*, 528 U.S. 855, 120 S.Ct. 139, 145 L.Ed.2d 118 (1999); *United States v. Mullins*, 315 F.3d 449, 452–453

(5th Cir.2002), *cert. denied*, 541 U.S. 1031, 124 S.Ct. 2096, 158 L.Ed.2d 713 (2004); *Van De Walker*, 141 F.3d at 1452 (citing *United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir.), *cert. denied*, 506 U.S. 842, 113 S.Ct. 127, 121 L.Ed.2d 82 (1992)); *Bradford*, 14 Cal.4th at 1053, 60 Cal.Rptr.2d 225, 929 P.2d at 574; *Commissioner of Correction v. Rodriquez*, 222 Conn. 469, 610 A.2d 631 (1992), *overruled on other grounds*, *Simms v. Warden*, 229 Conn. 178, 185 640 A.2d 601, 605 (1994); *State v. Robinson*, 138 Wash.2d 753, 765–766, 982 P.2d 590, 597–598 (1999).

67. 947 S.W.2d 262, 264 (Tex.Crim.App.1997).

68. 520 U.S. 461, 468–469, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).

though, because these were ineffective assistance of counsel cases, they were not labeled as such.[69]

Deprivation of the right to testify is not in *Johnson's* list of structural errors,[70] and the Supreme Court has never specifically labeled violations of the right as "structural." [71] The right to testify was, however, recognized as a "fundamental" constitutional right in *Rock v. Arkansas.*[72] In that case, the Supreme Court found that the right flowed from several provisions in the United States Constitution: the Due Process Clause of the Fourteenth Amendment ("right to be heard"), the Compulsory Process Clause of the Sixth Amendment, the "structure" of the Sixth Amendment (right to personally make a defense), and the Fifth Amendment's guarantee against compelled testimony.[73] Violations of rights flowing from the first, second, and fourth sources have historically been subjected to harm analyses.[74]

The third source includes the right to self-representation,[75] the denial of which has been characterized as structural.[76] In connection with its discussion of this source for the right to testify, the Supreme Court stated:

> Even more fundamental to a personal defense than the right of self-representation, which was found to be "necessari-

ly implied by the structure of the Amendment," is an accused's right to present his own version of events in his own words. A defendant's opportunity to conduct his own defense by calling witnesses is incomplete if he may not present himself as a witness.[77]

The question is whether the Supreme Court's discussion in *Rock*, including its characterization of the right as "fundamental" and its discussion of the third source of the right to testify, amounted to a pronouncement that a violation of the right to testify was a "structural" error for the purpose of conducting a harm analysis. We conclude that it did not.

Characterizing the right to testify as "fundamental" does not necessarily mean that a violation of the right is "structural." The Supreme Court has, in the past, applied harm analyses to constitutional rights characterized as "fundamental." [78] The footnote in *Rock* in which the Supreme Court labeled the right to testify as "fundamental" suggested that the right was fundamental in the sense that the defendant possessed the ultimate authority to decide whether to invoke it.[79] That is not the same as exempting a violation of the right from a harm analysis.

Nor should we find a structural defect merely because the right in question stems

---

**69.** Of course, the remedy for deprivation of appeal would be to grant an appeal, rather than a new trial of the case.

**70.** *Id.* at 468–469, 117 S.Ct. 1544.

**71.** *See Rock, passim.*

**72.** *Id.* at 53 n. 10, 107 S.Ct. 2704.

**73.** *Id.* at 51–53, 107 S.Ct. 2704.

**74.** *Crane v. Kentucky*, 476 U.S. 683, 690–691, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)(right to be heard under Due Process and Compulsory Process clauses); *Arizona v. Fulminante*,

499 U.S. 279, 312, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)(compelled testimony—involuntary confession).

**75.** *Rock*, 483 U.S. at 52, 107 S.Ct. 2704.

**76.** *See* above discussion.

**77.** *Rock*, 483 U.S. at 52, 107 S.Ct. 2704.

**78.** *Crane*, 476 U.S. at 687, 691, 106 S.Ct. 2142; *Rushen v. Spain*, 464 U.S. 114, 117–119, 104 S.Ct. 453, 78 L.Ed.2d 267 (1983).

**79.** *Rock*, 483 U.S. at 53 n. 10, 107 S.Ct. 2704 (citing, *inter alia, Jones v. Barnes* ).

from a source that includes rights whose violations are sometimes structural. Certain violations of the right to counsel are subject to a harm analysis, for example,[80] even though there are violations of the right to counsel that are structural.[81]

In fact, the Supreme Court addressed the defendant's right to testify in *Crane* and found that the deprivation of the right in that case was subject to a harm analysis.[82] Of course, we are confronted here with the complete denial of the right to testify at trial rather than the partial denial of the right that occurred in *Crane*, in which the defendant was denied the right to testify regarding the circumstances surrounding his confession.[83] Nevertheless, the Supreme Court has given no indication that the complete denial of the right to testify should be treated as structural, as is the case with the complete denial of the right to counsel.

■ Moreover, the Supreme Court's explanation regarding the differences between "trial error" and "structural error" supports treating even a complete denial of the right to testify as subject to a harm analysis. In *Fulminante*, the Supreme Court explained that a "trial error" is one "which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order

to determine whether" the error "was harmless."[84] By contrast, a "structural error" is one that affects "the entire conduct of the trial from beginning to end."[85] A structural error affects "the framework within which the trial proceeds, rather than simply [being] an error in the trial process itself."[86] It deserves mentioning that the Supreme Court found the admission of a coerced confession—the converse of precluding the defendant's testimony—to be trial error, subject to a harm analysis.[87] We think that the same conclusion with respect to the right to silence should be drawn with respect to the right to testify. While a defendant's right to testify is clearly important, even a compete denial of that right is not the type of error that affects the entire trial or the framework within which the trial proceeds. Rather, the effect of the error can be quantitatively assessed by looking at the defendant's anticipated testimony, the evidence admitted at trial, the jury charge, and other factors.

Moreover, the lower federal courts have not interpreted the discussion in *Rock* as a pronouncement that the violation of the right to testify is structural error. Except for the Third Circuit, which has not addressed the issue,[88] the federal circuits are unanimous in applying a harm or prejudice analysis to the denial of the right to testify, addressing the issue either as an inef-

---

**80.** *Fulminante*, 499 U.S. at 306–307, 111 S.Ct. 1246 (citing *Satterwhite v. Texas*, 486 U.S. 249, 108 S.Ct. 1792, 100 L.Ed.2d 284 (1988)(admission of evidence at sentencing in violation of Sixth Amendment Counsel Clause) and *Coleman v. Alabama*, 399 U.S. 1, 10–11, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970)(denial of counsel at preliminary hearing)).

**81.** *See* this opinion, *ante.*

**82.** *Crane*, 476 U.S. at 691, 106 S.Ct. 2142; *see also Fulminante*, 499 U.S. at 307, 111 S.Ct. 1246 (citing *Crane* ).

**83.** *Crane*, 476 U.S. at 691, 106 S.Ct. 2142.

**84.** 499 U.S. at 307–308, 111 S.Ct. 1246.

**85.** *Id.* at 309, 111 S.Ct. 1246.

**86.** *Id.* at 310, 111 S.Ct. 1246.

**87.** *Id.*

**88.** *Campbell v. Vaughn*, 209 F.3d 280, 281 n. 1 (3rd Cir.2000), *cert. denied*, 531 U.S. 1084, 121 S.Ct. 789, 148 L.Ed.2d 685 (2001).

fective assistance claim or as judicial trial error, depending on who was responsible for the alleged violation.[89]

89. *Bucuvalas v. United States,* 98 F.3d 652 (1st Cir.1996)(applying *Strickland:* defendant's testimony would have increased likelihood of conviction by allowing the introduction of a prior conviction and defendant's inevitable admissions); *Rega v. United States,* 263 F.3d 18, 21–26 (2nd Cir.2001), *cert. denied,* 534 U.S. 1096, 122 S.Ct. 847, 151 L.Ed.2d 725 (2002)(applying *Strickland:* significance of defendant's proposed testimony wholly dependent on his credibility and incredibility of other witnesses, testimony would have been severely undermined by impeachment, testimony would have opened the door to extraneous conviction, and evidence of guilt was substantial, including defendant's prior admissions); *Sexton,* 163 F.3d at 882–884 (4th Cir.)(applying *Strickland:* discussing the right to testify in the context of the right not to testify, considering overwhelming evidence); *Mullins,* 315 F.3d at 456 (5th Cir.)(applying *Strickland:* defendant's testimony would open the door to extensive criminal record and drug use, much of defendant's story presented through other witnesses); *Gonzales v. Elo,* 233 F.3d 348, 357 (6th Cir. 2000), *cert. denied,* 532 U.S. 980, 121 S.Ct. 1621, 149 L.Ed.2d 483 (2001)(applying *Strickland:* several witnesses corroborated government's version of events and defendant's testimony would impeach only one of them); *Ortega v. O'Leary,* 843 F.2d 258 (7th Cir.), *cert. denied,* 488 U.S. 841, 109 S.Ct. 110, 102 L.Ed.2d 85 (1988)(applying *Chapman* to judicial trial error: overwhelming evidence of guilt, defendant's testimony would merely bolster testimony of other witnesses); *Hines v. United States,* 282 F.3d 1002, 1004–1005 (8th Cir.), *cert. denied,* 537 U.S. 900, 123 S.Ct. 215, 154 L.Ed.2d 172 (2002)(applying *Strickland:* defendant failed to show prejudice because he failed to say what his testimony would have been); *Gill v. Ayers,* 342 F.3d 911, 921–922 (9th Cir.2003)(applying *Chapman* to judicial trial error: error was not harmless because the defendant's testimony was central to his defense); *United States v. Rantz,* 862 F.2d 808, 811 (10th Cir.1988), *cert. denied,* 489 U.S. 1089, 109 S.Ct. 1554, 103 L.Ed.2d 857 (1989)(applying *Strickland:* overwhelming evidence of guilt); *Nichols v. Butler,* 953 F.2d 1550, 1553–1554 (11th Cir.1992)(applying *Strickland:* prejudice shown because it was a close case, identity hinged on testimony of single witness who had only a brief glimpse of the robber); *United States v. Tavares,* 100 F.3d 995, 998–999 (D.C.Cir.1996), *cert. denied,* 520 U.S. 1160, 117 S.Ct. 1344, 137 L.Ed.2d 502 (1997)(rejecting request to adopt *per se* rule of prejudice; applying *Strickland:* defendant's testimony would be largely cumulative or peripheral, overwhelming evidence of guilt).

Similarly, the vast majority of the state courts of last resort that have addressed the issue have found that a harm or prejudice analysis applies. *LaVigne,* 812 P.2d at 220 (Alaska)(applying *Chapman* to all violations of the right); *State v. Franklin,* 351 Ark. 131, 137–139, 89 S.W.3d 865, 868–869 (2002)(applying *Strickland:* overwhelming evidence of guilt); *Rodriquez,* 222 Conn. at 478–479, 610 A.2d at 636–637 (prejudice must be shown; applying *Strickland:* should weigh defendant's credibility and impact of his proposed testimony versus impeachment with prior suspicious incidents, motives for committing the crime, evidence linking him to the crime, and the extent to which proposed testimony was duplicative of earlier statements); *Oisorio v. State,* 676 So.2d 1363, 1364–1365 (Fla.1996)(declining to adopt a *per se* rule of prejudice; applying *Strickland* ); *Chambers v. State,* 266 Ga. 39, 42 n. 8, 463 S.E.2d 887, 890 n. 8 (1995)(applying *Strickland:* defendants failed to show jury would have acquitted had they testified, their stories were uncorroborated and conflicting); *Tachibana,* 79 Hawai'i at 240, 900 P.2d at 1307 (applying "beyond reasonable doubt harmless" standard to all violations of the right); *People v. Madej,* 177 Ill.2d 116, 146–147, 226 Ill.Dec. 453, 685 N.E.2d 908, 923 (1997), *cert. denied,* 523 U.S. 1098, 118 S.Ct. 1565, 140 L.Ed.2d 799 (1998), *overruled on other grounds, People v. Coleman,* 183 Ill.2d 366, 233 Ill.Dec. 789, 701 N.E.2d 1063 (1998)(applying *Strickland:* overwhelming evidence of guilt); *Schertz v. State,* 380 N.W.2d 404, 413–414 (Iowa 1985)(applying *Strickland:* testimony would have been about unavailable defense and would not have diluted strong evidence against defendant); *Quarels v. Commonwealth,* 142 S.W.3d 73 (Ky.2004)(rejecting request to treat error as structural; applying *Chapman* to judicial trial error); *Washington v. State,* 800 So.2d 1140, 1146 (Miss.2001)(applying *Strickland:* if he testified, defendant would have been impeached with prior felonies and jury would have been given opportunity to compare his voice to one on a record-

In line with the reasoning of the Supreme Court and the holdings of the federal courts that have addressed the issue, we hold that a complete denial of the right to testify at trial is not a structural defect but is the type of violation that can be subjected to a harm/prejudice inquiry. Consequently, the usual *Strickland* prejudice analysis applies: the defendant must show a reasonable probability that the outcome of the proceeding would have been different had his attorney not precluded him from testifying.

### D. Application

■ While the ultimate question of prejudice under *Strickland* is to be reviewed *de novo*, the trial court should be afforded deference on any underlying historical fact determinations.[90] When no express fact findings are made by the trial court, as is the case with rulings on motions for new trial,[91] appellate courts should "impute implicit factual findings that support the trial judge's ultimate ruling on that motion when such implicit factual findings are both reasonable and supported in the record."[92] Viewing the evidence in accordance with these principles, we agree with the court of appeals that appellant's ineffective assistance claim must fail.

■ The trial court could have reasonably believed that appellant's testimony at trial would not have been significantly different from some of the exculpatory statements found in the recorded telephone conversations. In those conversations, appellant stated that he and the victim were both to blame for the fight and that he did not intend to hurt the victim. And in fact, trial counsel testified that appellant's and the victim's stories were very similar. The victim surprised trial counsel by acknowledging her responsibility for some of the acrimony, including her reckless attempt

ing); *Winfield v. State*, 93 S.W.3d 732, 736–737 (Mo.2002)(applying *Strickland:* if he testified, defendant would have suffered "disastrous" impeachment with prior inconsistent statements as well as testimony given in guilt phase); *El–Tabech*, 234 Neb. at 836–838, 453 N.W.2d at 95–96 (applying *Strickland* ); *State v. Paulsen*, 143 N.H. 447, 455–456, 726 A.2d 902, 907–908 (1999)(rejecting request to presume prejudice; applying *Strickland:* overwhelming evidence); *State v. Bey*, 161 N.J. 233, 736 A.2d 469 (1999), *cert. denied*, 530 U.S. 1245, 120 S.Ct. 2693, 147 L.Ed.2d 964 (2000)(rejecting request to presume prejudice or analyze under *Chapman*; applying *Strickland:* defendant's testimony would not have affected substantially penalty phase deliberations); *State v. Foster*, 560 N.W.2d 194, 198 (N.D.1997)(applying *Strickland:* must show defense was prejudiced); *Hooks v. State*, 862 P.2d 1273, 1283 (Okla.Crim.App.1993), *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994)(applying *Strickland:* defendant failed to demonstrate any possibility that outcome of trial would have been different); *Wilcox*, 488 N.W.2d at 660 (S.D.)(applying *Strickland:* defendant did not show reasonable probability of change in outcome);

*Momon*, 18 S.W.3d at 163–167 (Tenn.)(declining to find "structural" error, analyzing *Fulminante;* applying *Chapman* to all violations of the right); *State v. Arguelles*, 921 P.2d 439, 441–442 (Utah 1996)(rejecting request to presume prejudice; applying *Strickland:* record does not reflect what defendant's testimony would have been); *Robinson*, 138 Wash.2d at 765–769, 982 P.2d at 597–599 (rejecting rule of *per se* reversal; applying *Strickland:* defendant must show that his testimony would have a reasonable probability of effecting a different outcome); *Sanchez*, 841 P.2d at 88 (Wyo.)(applying *Chapman* to all violations of the right).

90. *Kober v. State*, 988 S.W.2d 230, 233 (Tex.Crim.App.1999)(citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997)).

91. *See* TEX. R. APP. P. 21.8(b)("In ruling on the motion for new trial, the court must not summarize, discuss, or comment on evidence").

92. *Charles v. State*, 146 S.W.3d 204, 213 (Tex. Crim.App.2004).

to flip the car while her child was inside. The trial court was not required to believe that the defendant would have testified at trial to the *more* exculpatory version of events given at the motion for new trial hearing.

Moreover, had appellant testified, he could have been impeached with his earlier denial that he had even been at the Town and Country convenience store. Although that statement was suppressed under *Miranda*, it would have been admissible as impeachment.[93] Impeachment with that earlier statement would have undermined appellant's credibility, conflicting with his trial testimony and that of the Town and Country store clerk, a disinterested witness. At the same time, the earlier statement would have conveyed to the jury that appellant knew he had something to hide. In addition, instead of waiting for the punishment stage to introduce appellant's prior felony convictions, the State could have introduced them at the guilt stage. Appellant could also have been confronted on cross-examination with numerous other incriminating statements made in the phone conversations and in his letters to the victim, including his attempt to get the victim to exculpate him by saying things that were not true.

And even if the trial court believed that the more exculpatory version of events given by appellant at the motion for new trial hearing was in fact the version he would have given at trial, there still would not be a reasonable probability that the outcome would change. Instead of one consistent, albeit weak, exculpatory story of the transaction, such testimony, and the impeachment that would follow, would reveal that appellant told three inconsistent stories about the incident in question. The testimony about the "stick" would have been entirely new, and could have been vigorously challenged by the State in cross-examination. In addition, by saying that the victim made a gagging noise as he was trying to push her off, appellant could have opened the door at the guilt stage to testimony concerning the details of the prior assault offense-in which he choked a former girlfriend—to rebut a claim of accident. And his claim that he did not choke the victim would have been contradicted by Officer Paulk's observation that choke marks were present on the victim's neck.

Further, appellant's testimony could have hurt him at the punishment stage because of its tendency to show that, even at the time of trial, he refused to accept his share of the blame for what happened.

As for appellant's contention that the court of appeals failed to recognize the "special significance" of an accused's testimony, even assuming that special significance should be accorded, it would not help appellant here. Some exculpatory statements by appellant were before the jury through the recorded telephone conversations. Appellant also incriminated himself in those conversations and in letters to the victim with his admissions of wrongdoing and his attempts to derail the prosecution by getting the victim to recant or drop the charges. His chances of acquittal were admittedly slim, but there was at least a chance the jury might have decided that both appellant and the victim were equally to blame for what occurred in the encounter. Had he testified, however, his chances would have become slimmer: the jury would have discovered that appellant was a two-time felon who had choked a previous girlfriend, had given contradictory and unlikely stories about the incident, and had evidenced his consciousness of guilt by initially trying to deny his participation in the events in question.

---

**93.** *Harris v. New York,* 401 U.S. 222, 225–226, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971).

We find that court of appeals did not err in holding that the prejudice prong of *Strickland* has not been satisfied.

The judgment of the court of appeals is affirmed.

PRICE, WOMACK, JOHNSON and KEASLER, JJ., concurred.