In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00139-CR


______________________________




JERRY DON ALLEN, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the Fifth Judicial District Court


Cass County, Texas


Trial Court No. 2004F00224




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter



O P I N I O N



 A jury rejected Jerry Don Allen's insanity defense and found him guilty of two counts of
assault on a public servant. (1) The jury assessed punishment at three years' confinement on each count,
and the court sentenced Allen accordingly, the sentences to run concurrently. Allen contends that
the evidence was factually insufficient to support the jury's rejection of the insanity defense and that
the court erred when it ended Allen's testimony during the punishment phase. 

 In a bizarre series of events, Allen came into a medical clinic, asked for a glass of water, 
took a lab coat and wandered around for a bit, dropped the coat, then left. Joan Gale, a clinic
administrator, followed him outside, asked about the coat, and was told he had left it in the clinic
(which he had). She testified she was worried that Allen might have taken some items in the coat
pockets, and the police were called. She approached Allen as he was walking away and asked him
to stay. 

 In response, Allen asked Gale if she needed a blessing, informed her that he was the son of
David, and struck her on the side of her head hard enough to knock her down. Officer Sherry
Gillespie arrived at about that time. Gillespie testified she saw Allen walking down the street,
flailing his arms and yelling. She was told that he had hit a woman, and she asked Allen to stop. 
He eventually did, and on second request, got on the ground. When Gillespie attempted to handcuff
Allen, he kissed her hand and then began to struggle against her. He got loose, and as he did, there
was evidence he kicked Gillespie in the forehead. (2) Gillespie then sprayed Allen with pepper spray,
and shortly thereafter he was taken into custody. Larue Pavia, a pharmacist at the Linden Pharmacy,
testified that she saw the altercation and saw Allen walking down the street declaring that he was
Jesus Christ and the son of David. (3)

 The evidence shows that Allen had a history of schizophrenia dating back to 1984, and had
been medicated and for some time been provided services by the State for that disease. At the time
of this incident, he had been dropped from Mental Health/Mental Retardation and given samples of
his medication (in a much lower dosage). His primary healthcare provider was at the Linden clinic,
and he was evidently attempting to see that provider when this incident occurred. 

Insanity 

 Allen first contends that the judgment should be reversed because the jury's failure to find
in his favor on the affirmative defense of insanity was against the great weight of the evidence. "It
is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result
of severe mental disease or defect, did not know that his or her conduct was wrong." Tex. Penal
Code Ann. § 8.01 (Vernon 2003); see Mendenhall v. State, 77 S.W.3d 815, 817-18 (Tex. Crim.
App. 2002). The defendant raising the affirmative defense of insanity bears the burdens of proof and
persuasion. Meraz v. State, 785 S.W.2d 146, 150 (Tex. Crim. App. 1990). 

 In conducting a factual review of an affirmative defense, the proper standard of review is,
whether after considering all the evidence relevant to an appellant's affirmative defense of insanity,
the judgment is so against the great weight and preponderance of the evidence so as to be manifestly
unjust. Bigby v. State, 892 S.W.2d 864, 875 (Tex. Crim. App. 1994). (4) The issue of insanity at the
time of the offense lies in the province of the jury not only with regard to the credibility of the
witnesses and the weight of the evidence, but also as to the limits of the defense itself. Graham v.
State, 566 S.W.2d 941, 948 (Tex. Crim. App. 1978); Reyna v. State, 116 S.W.3d 362, 367 (Tex.
App.--El Paso 2003, no pet.).

 All of the witnesses either testified to events or conclusions showing that Allen suffered from
a severe mental disease or defect--and had for decades. (5) 

 The question before the jury was whether Allen's mental disease or defect prevented him
from knowing his actions were wrong. Allen presented the testimony of Kelly Joslin, a licensed
professional counselor, who had evaluated and treated Allen since 2001. She testified that he had
been diagnosed with schizophrenia since 1984. Her ultimate conclusion was that Allen suffered
from a severe mental disease or defect and did not know that his conduct was wrong on the day of
the offense. 

 The State called Dr. Dunn, a psychiatrist who had evaluated Allen. Dunn reported that, "It
is evident that around the time of the offense, he was suffering from paranoid delusional beliefs, as
well as some grandiose religious beliefs." Dr. Dunn continued, "He also had difficulty organizing
his thinking and was noted to be incoherent on the day of the second offense." Dr. Dunn concluded
that, "Despite his psychosis, his knowledge of wrongfulness regarding his actions at the time of the
offenses did not seem to be impaired." Dr. Dunn thus concluded that Allen was not insane.

 There was evidence which, if believed by the jury, supported its failure to acquit based on
the affirmative defense of insanity. Further, there is no conclusive proof to the contrary. The
judgment is thus not so against the great weight and preponderance of the evidence as to be
manifestly unjust. The contention of error is overruled.

Restriction of Allen's testimony

 Allen claims, in his second point of error, that the court erred in "disallowing Appellant from
testifying on his own behalf" during the punishment phase of trial. Allen claims this is error under
Article I, Section 10 of the Texas Constitution, which states that a defendant "shall have the right
of being heard by himself or counsel, or both." See Tex. Const. art. I, § 10. 

 The contention of error is not precisely accurate: Allen was allowed to testify. The
complaint is that his testimony was cut short in an improper fashion. The reason his testimony
ended, however, was not due to an arbitrary decision by the trial court, but was because of Allen's
own behavior. As he began to testify, Allen answered some questions, but then began to provide
additional information not related to the questions asked. However, after several questions which
he answered in this extended fashion (and with continued, sustained objections by the State), and
after Allen continued to interrupt both counsel and court, and after several very pointed warnings by
the trial court, the trial court ended Allen's testimony because he refused to comply with the court's
direction that he respond to the questions asked. (6) The trial court also held Allen in contempt for his
refusal to comply. (7)
 The trial court then allowed Allen's attorney to proffer the testimony that Allen
would have completed had the examination continued. Allen's attorney then presented the testimony
that would have been elicited from Allen; the State stipulated to the testimony presented in the
proffer. The jury was brought back into the courtroom, and the trial court instructed the jury that 
such evidence was admissible and the jury was to "accept it and give it whatever weight or whatever
credibility that you determine it should have as your role as fact finders in this case." (8) 

 There are several cases that assess a defendant's "fundamental right to testify" in his or her
behalf. See Johnson v. State, 169 S.W.3d 223, 232 (Tex. Crim. App. 2005) ("the right to testify is
'fundamental' and personal to the defendant"); see also Rock v. Arkansas, 483 U.S. 44, 52-53, and 
n.10 (1987). (9) However, Allen's case presents a different scenario from those in which a defendant
was prevented from testifying. Allen was on the stand and proved himself incapable of conforming
his conduct so that the trial could proceed in an appropriate and orderly fashion.

 The trial court has the power and obligation to control the courtroom for the purposes of
ascertaining the truth, promoting judicial economy, and protecting witnesses. Rule 611(a) of the
Texas Rules of Evidence states:

 The court shall exercise reasonable control over the mode and order of interrogating
witnesses and presenting evidence so as to (1) make the interrogation and
presentation effective for the ascertainment of the truth, (2) avoid needless
consumption of time, and (3) protect witnesses from harassment or undue
embarrassment. 


Tex. R. Evid. 611(a). In a similar vein, this Court has previously recognized that "the trial judge has
the  inherent  power  to  control  the  orderly  proceedings  in  the  courtroom,  .  .  .  ."  Gonzales  v.
State, 2 S.W.3d 600, 607 (Tex. App.--Texarkana 1999, pet. ref'd). (10)

 We analyze questions committed to the trial court's exercise of discretion by inquiring
whether the trial court acted without reference to guiding rules and principles or, stated otherwise,
whether the court acted arbitrarily or unreasonably. See Lyles v. State, 850 S.W.2d 497, 502 (Tex.
Crim. App. 1993). If a trial court's discretionary ruling falls "within the zone of reasonable
disagreement," we must affirm. Wheeler v. State, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002); 
Burks v. State, No. 01-05-00856-CR, 2006 WL 3628897, at *4 (Tex. App.--Houston [1st Dist.]
Dec. 14, 2006, pet. ref'd) (mem. op., not designated for publication).

 In this instance, the trial court made multiple attempts--over the course of the trial and
ultimately reaching their zenith during the punishment stage--to ensure that Allen acted in a
nondisruptive fashion and in accordance with the procedural and evidentiary requirements of the
forum. Allen ultimately proved that he would not do so, and (after fair warning and after holding
him in contempt) the court ended his testimony. Further, a stipulation of Allen's testimony was
presented to the jury with an instruction that the jury was to accept the stipulation as testimony and 
give it the weight the jury believed the testimony deserved. We find that the court's decision was
made within its discretionary authority and with reference to guiding rules and principles laid down
by the highest court of the land. Error has not been shown.

 We affirm the judgment.


 Jack Carter

 Justice


Date Submitted: May 17, 2007

Date Decided: August 2, 2007


Publish
1. See Tex. Penal Code Ann. § 22.01(b)(1) (Vernon Supp. 2006).
2. The evidence about the kicking was in conflict, but as sufficiency of the evidence is not at
bar, any variance is irrelevant.
3. The second offense occurred when Allen was confined in jail and assaulted officer Alan
Powell.
4. The Meraz case adopted the standard that is used in civil law when the jury fails to find
affirmatively on an issue on which the appealing party had the burden of proof. 785 S.W.2d 146. 
5. The defense expert noted a diagnosis of Schizophrenia, disorganized type. The State's
expert, Dr. Mitchell H. Dunn, noted a past diagnosis (going back to the 1980s) of paranoid
schizophrenia, but, stating, "Mr. Allen is somewhat difficult to diagnose," diagnosed him as having
"Psychotic Disorder, Not Otherwise Specified." 
6. The trial court's admonishments to Allen and decision to terminate his testimony occurred
outside of the presence of the jury.
7. Allen had several inappropriate outbursts during voir dire as well: (1) interrupting during
voir dire examination; and (2) showing hostility toward his attorney and a potential juror to the point
that the court excused the jurors and admonished Allen to not walk around to the podium during
proceedings and to not interrupt the proceedings, and warned Allen that he could be gagged and
handcuffed to a chair. 

8. The stipulation was: "Mr. Jerry Don Allen was convicted as per the State's evidence here,
but this was for a three to four-month period in 1995. There have been no further felony convictions
since then. And he would, therefore, ask you, ladies and gentlemen of the jury, to be very lenient
with him, understand his mental problem and give him a lenient sentence of two years." 
9. Both Allen and the State failed to state in their briefs that no objection was made to the
court's action in terminating Allen's testimony. The Texas Court of Criminal Appeals has held "our
system may be thought to contain rules of three distinct kinds (1) absolute requirements and
prohibitions; (2) rights of litigants which are to be implemented by the system unless expressly
waived; and (3) rights of litigants which are to be implemented upon request." Marin v. State, 851
S.W.2d 275, 279 (Tex. Crim. App. 1993). Since the parties have not addressed the issue, we will
not decide today whether an objection below is required to preserve an alleged error of this nature
on appeal. Further, if error was found, we would be required to conduct a harm analysis since the
Texas Court of Criminal Appeals has held the deprivation of the right to testify is not a "structural"
error and therefore is subject to a harm analysis. Johnson, 169 S.W.3d at 239. 
10. See Geders v. United States, 425 U.S. 80, 86-91 (1976) (explaining that abuse of discretion
standard applies because trial court "must meet situations as they arise and to do this must have
broad power to cope with the complexities and contingencies inherent in the adversary process");
see also Illinois v. Allen, 397 U.S. 337, 342-43 (1970) (upholding removal of defendant from
courtroom based on the discretion afforded trial courts to respond to disruptive defendants in order
to maintain "dignity, order, and decorum" that are essential to court proceedings--and specifically
holding that citing a defendant for contempt was one option to obtain compliance); Ramirez v. State,
76 S.W.3d 121, 130 (Tex. App.--Houston [14th Dist.] 2002, pet. ref'd) (upholding, as proper
exercise of discretion, trial court's removal of disruptive defendant from courtroom when trial court
"lacked reason to believe that [the] misbehavior would cease"); Burks v. State, 792 S.W.2d 835,
837-38 (Tex. App.--Houston [1st Dist.] 1990, pet. ref'd) (upholding expulsion of "continuously
nonresponsive and disruptive" defendant from courtroom as proper exercise of discretion vested in
trial court pursuant to United States Supreme Court precedent and thus nonviolative of constitutional
rights).



nt-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoFootnoteText, li.MsoFootnoteText, div.MsoFootnoteText
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footnote Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 text-align:justify;
 text-justify:inter-ideograph;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;}
p.MsoHeader, li.MsoHeader, div.MsoHeader
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Header Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 tab-stops:center 3.25in right 6.5in;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:none;
 mso-layout-grid-align:none;
 text-autospace:none;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-bidi-font-family:Tahoma;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Times New Roman","serif";
 mso-ascii-font-family:"Times New Roman";
 mso-hansi-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:"Times New Roman";
 mso-fareast-theme-font:minor-fareast;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;
 mso-bidi-font-family:"Times New Roman";
 mso-bidi-theme-font:minor-bidi;}
.MsoPapDefault
 {mso-style-type:export-only;
 margin-bottom:10.0pt;
 line-height:115%;}
 /* Page Definitions */
 @page
 {mso-page-border-surround-header:no;
 mso-page-border-surround-footer:no;
 mso-footnote-separator:url("6-10-023-CV%20MM%20Carpenter%20FINAL%20mtd_files/header.htm") fs;
 mso-footnote-continuation-separator:url("6-10-023-CV%20MM%20Carpenter%20FINAL%20mtd_files/header.htm") fcs;
 mso-endnote-separator:url("6-10-023-CV%20MM%20Carpenter%20FINAL%20mtd_files/header.htm") es;
 mso-endnote-continuation-separator:url("6-10-023-CV%20MM%20Carpenter%20FINAL%20mtd_files/header.htm") ecs;}
@page Section1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:1.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-023-CV%20MM%20Carpenter%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-023-CV%20MM%20Carpenter%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-023-CV%20MM%20Carpenter%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-023-CV%20MM%20Carpenter%20FINAL%20mtd_files/header.htm") f1;
 mso-first-header:url("6-10-023-CV%20MM%20Carpenter%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-023-CV%20MM%20Carpenter%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.Section1
 {page:Section1;}
@page Section2
 {size:8.5in 11.0in;
 margin:2.0in 1.0in 1.0in 1.0in;
 mso-header-margin:2.0in;
 mso-footer-margin:1.0in;
 mso-even-header:url("6-10-023-CV%20MM%20Carpenter%20FINAL%20mtd_files/header.htm") eh1;
 mso-header:url("6-10-023-CV%20MM%20Carpenter%20FINAL%20mtd_files/header.htm") h1;
 mso-even-footer:url("6-10-023-CV%20MM%20Carpenter%20FINAL%20mtd_files/header.htm") ef1;
 mso-footer:url("6-10-023-CV%20MM%20Carpenter%20FINAL%20mtd_files/header.htm") f2;
 mso-first-header:url("6-10-023-CV%20MM%20Carpenter%20FINAL%20mtd_files/header.htm") fh1;
 mso-first-footer:url("6-10-023-CV%20MM%20Carpenter%20FINAL%20mtd_files/header.htm") ff1;
 mso-paper-source:0;}
div.Section2
 {page:Section2;}
-->











 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00023-CV

                                                ______________________________

 

 

                             IN THE MATTER OF THE
MARRIAGE OF

ENESHA TANSHELL THOMPSON
CARPENTER

AND KEVIN JAMESON
CARPENTER AND

IN THE INTEREST OF A CHILD

 

 

                                                                                                  


 

 

                                       On Appeal from the 321st
Judicial District Court

                                                             Smith County, Texas

                                                         Trial Court
No. 09-2331-D

 

                                                                                                   

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                            Memorandum Opinion by Justice Moseley








                                                     MEMORANDUM 
OPINION

 

            Kevin
Jameson Carpenter filed his notice of appeal pro se March 3, 2010.[1]

            The
clerks record was filed April 8, 2010. 
No timely request was made in writing at or before the time for
perfecting the appeal for the preparation of a reporters record, as required
by Tex. R. App. P. 34.6.  Therefore, appellants brief was due June 4,
2010.  

            When
neither a brief nor a motion to extend time for filing the same had been filed
by June 24, 2010, we contacted appellant by letter and informed him that
if a brief had not been filed by July 9, 2010, the appeal would be subject to
dismissal for want of prosecution.  See Tex.
R. App. P. 42.3(b), (c).

            No
brief has been filed, and appellant has taken no other action in pursuit of his
appeal.  Pursuant to Tex. R. App. P. 42.3(b), we dismiss
this appeal for want of prosecution.

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date Submitted:          July 26, 2010

Date Decided:             July 27, 2010

 











[1]Originally
appealed to the Twelfth Court of Appeals, this case was transferred to this
Court by the Texas Supreme Court pursuant to its docket equalization
efforts.  See Tex. Govt Code Ann.
§ 73.001 (Vernon 2005).