Opinion Issued March 5, 2009









Opinion Issued March 5,
2009

 

 

 

 

 

 



 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-08-00319-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



SANDY ALEXY AGOSTO, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 208th District Court

Harris County, Texas

Trial Court Cause No. 1094455

 










 



O P I N I O N

           Sandy Agosto was charged
with aggravated robbery and pleaded not guilty.  Tex. Penal Code Ann. § 29.03 (Vernon 2003).  A jury
found him guilty and assessed punishment at twenty-two-and-one-half years’ confinement
and a $10,000 fine.  Agosto appeals, alleging that his trial counsel rendered
ineffective assistance because he limited Agosto in his testimony on his own
behalf during the punishment phase of the trial, and that the trial court erred
by not sua sponte allowing Agosto to testify further in the punishment phase
about his version of events and the crime.  We affirm.

Background

On the night of October
30, 2006, the complainant, Dayana Delgado, was asleep in her home, where she
lived alone.  At around 11:30 P.M., Delgado was awakened by the sound of
intruders breaking into her home through a glass door.  Delgado immediately
called 911 and leaned against the door to her bedroom to try to prevent the
intruders from entering the room.  The intruders hit the bedroom door with a
crowbar, and three men entered her room, grabbed her, hit her, and demanded
money.  Delgado was not able to tell the 911 operator anything on the phone,
but the police were dispatched to the scene because the operator heard Delgado
screaming.

Delgado testified that,
based on their accents, she determined that two of the men were Colombian, and
one was Dominican.[1]
The shorter of the two Colombians hit Delgado, pointed a firearm at her, and
threatened to kill her if she called the police.  In court, Delgado identified
this person as Agosto.  While the other men were downstairs Agosto took her
upstairs at gunpoint, took off her clothes, and attempted to sexually assault
her.  When the other two men came upstairs, Agosto stopped, and went downstairs. 
The other two men took her to another room where they bound her hands and feet
and gagged her with a dress.  Agosto returned and attempted to assault her a
second time, but he stopped because he saw that the police had arrived.  The
men ran out of the back door of the house and left Delgado tied up inside.

The police on the scene
were unable to apprehend any of the intruders, who escaped into a wooded area
behind the house.  However, the arriving officers called for canine unit
backup, and the canine units were able to recover two items from the wooded
area behind the house: a dress belonging to Delgado, and a knit cap.  The knit
cap was tested for DNA and was found to have DNA from two different people on
it.  Agosto’s DNA could not be excluded as a match to one of the DNA profiles.

The intruders left a
vehicle in the driveway of Delgado’s house.  The next morning, a woman called
and reported the vehicle stolen.  However, the vehicle showed no signs of
forced entry or damage to the ignition switch or steering column, which led
officers to believe that it was borrowed rather than stolen.  Police
interviewed the vehicle’s owner who provided them with the nickname of a
person.  Police traced this nickname or assumed name through a database and linked
it to Agosto.  The police created a photo lineup, and Delgado identified Agosto
as the intruder who attempted to sexually assault her.

The jury found Agosto
guilty.  During the punishment phase, defense counsel called Agosto to the
stand to prove eligibility for probation.  On direct examination, Agosto
testified that he was from Puerto Rico.  He also stated that he wanted to give
testimony to the jury.  He stated that he did not agree with the jury’s verdict
and wanted to be able to give his testimony about “how things really were.”  He
testified that he was not at Delgado’s house and that he had never seen her
before.  Defense counsel declined to ask Agosto additional questions along
these lines.

After the jury left the
courtroom to deliberate on punishment, defense counsel offered, on the record,
his reasons for not asking more questions of Agosto during the punishment
phase.  He said that he “believe[d] that he would – and not wanting to go into
any attorney/client conversations – basically, he would lay out the facts in
which the jury could conclude that they were basically right; and that he was
guilty.  It would have been more evidence.”  As for why he did not call Agosto
during the guilt/innocence phase, he said, “[I] advised him to exercise his Fifth
Amendment right because I believed that his testimony, especially on
cross-examination . . . basically supplied more information to connect him with
the crime.”  He stated that it was trial strategy not to call Agosto to
testify.  Agosto contends that he was denied his right to fully testify in the
punishment phase and that such a denial constitutes ineffective assistance of
counsel.  He requests that this court reverse and remand for a new trial, or
alternatively, for a new punishment hearing.

Analysis

The Right to Testify

A defendant has a right
to testify at his own trial, and such a right is fundamental and personal to
the defendant.  Johnson v. State, 169 S.W.3d 223, 232, 235 (Tex. Crim.
App. 2005) (citing Rock v. Arkansas, 483 U.S. 44, 52, 107 S. Ct. 2704, 2709 (1987)).  In Johnson, the Court of Criminal Appeals held, in
agreement with the majority of jurisdictions, that a trial court has no duty to
inform a defendant represented by counsel of his right to testify.  Id. at 235.  Rather, it is the responsibility of defense counsel to inform a
defendant of his right to testify, including the fact that the ultimate
decision of whether to testify belongs to him.  Id.  Thus, a claim that
a defendant was denied his right to testify is properly addressed under the Strickland
framework for an ineffective assistance claim.  Id.

The right to testify is
“fundamental” in the sense that the defendant possesses the ultimate authority
on whether to invoke the right.  Id. at 236.  The denial of the right to
testify is a trial error, rather than a structural error, which is subject to a
harm analysis.  Id. at 237.  A court assesses the effect of any alleged
error by looking at the defendant’s anticipated testimony, the evidence
admitted at trial, the jury charge, and other factors.  Id. at
237–38.

Ineffective Assistance

To prevail on a claim of
ineffective assistance of counsel, the defendant must show that (1) his
counsel’s performance was deficient and (2) a reasonable probability exists
that the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).  The first prong of Strickland
requires the defendant to show that counsel’s performance fell below an
objective standard of reasonableness.  Thompson v. State, 9 S.W.3d 808,
812 (Tex. Crim. App. 1999).  Thus, the defendant must prove objectively, by a preponderance
of the evidence, that his counsel’s representation fell below professional
standards.  Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App.
2002).  The second prong requires the defendant to show a reasonable
probability that, but for counsel’s unprofessional errors, the result of the
proceeding would have been different.  See Strickland,
466 U.S. at 694, 104 S. Ct. at 2068; see also Thompson, 9 S.W.3d at
812.  In reviewing counsel’s performance, we look to the totality of the
representation to determine the effectiveness of counsel, indulging a strong
presumption that the attorney’s performance falls within the wide range of
reasonable professional assistance or trial strategy.  Thompson, 9
S.W.3d at 813.  Furthermore, a claim of ineffective assistance must be firmly
supported in the record.  Id. (citing McFarland v. State, 928
S.W.2d 482, 500 (Tex. Crim. App. 1996)).

          Here, the trial record fails
to demonstrate that counsel’s performance fell below an objective standard of
reasonableness.  See id.  Counsel stated that, based on the privileged
discussions he had with his client, additional testimony from Agosto would
reinforce the evidence presented during the guilt/innocence phase of the trial;
thus; it was reasonable trial strategy for counsel to advise Agosto to limit
the nature of his testimony during the punishment phase.  During the punishment
phase, the following exchange occurred between the prosecutor and Agosto while
he testified:

Prosecutor:  Do you agree with the jury’s verdict.

Agosto:       No.  I want to be able to give my
testimony, to give my testimony how things really were.

Prosecutor:  Okay.  Were you there that day?

Agosto:       No.

Prosecutor:  Okay.  So you are saying that the jury
got it wrong in this case, correct?

Agosto:       They have not heard my testimony.

Prosecutor:  Now, Mr. Agosto, you did hear the
testimony in this case though, correct?

Agosto:       Yes, but I did not have the opportunity
to give my version.

Prosecutor:  Now, having heard the testimony in this
case, you heard Ms. Delgado get on the stand, correct?

Agosto:       Yes, I heard her.

. . . . 

Prosecutor:  And she would have no way to know about
you being connected with that car, correct?

Agosto:       I don’t know her.  I have never seen
her.

Prosecutor:  Okay, that is kind of the next thing. 
You have never seen her before, correct?

Agosto:       Never.  I have never had any dialogue
with her or seen her in my life, never in my life.

Prosecutor:  And you never threatened her at any point
in time, correct?

Agosto:       I don’t know, you know, even where she
comes from.  I just don’t know her.

Prosecutor:  I mean, she would have no reason really
at all to point you out in this lineup, correct?  It is not like you all have a
grudge against each other, correct?

Agosto:       Yes; but if you give me the opportunity
to talk to the jury and let them hear my testimony, then you will find out that
I didn’t have anything to do with this, that I don’t even know her.

After this exchange, defense counsel
chose not to inquire further about the defendant’s version of events.  Based on
the record before us, we cannot conclude that defense counsel’s efforts fell
below a reasonable level of professional assistance.  Defense counsel stated on
the record that he was concerned that Agosto’s testimony would be further
evidence against him, given that Agosto already had stated that he had never
been near the scene of the crime or seen Delgado before, which was contradicted
by evidence of his DNA at the crime scene and Delgado’s identification of
Agosto.  Agosto’s assertions on appeal, in the absence of anything more in the
trial record, are insufficient to show that he asserted his right to testify
further and his attorney failed to protect it.  Salinas v. State,
163 S.W.3d 734, 740–41 (Tex. Crim. App. 2005) (holding that where counsel
advised appellant against testifying because of his prior convictions, no
evidence in the record showed that counsel failed to protect appellant’s right
to testify).

Independent Trial Court Duty

          Agosto further contends
that the trial judge had a duty to make an inquiry and allow him to testify
further when defense counsel did not.  Here, the face of the record belies such
a contention.  The trial judge had no obligation to inquire further in light of
defense counsel’s statements, which demonstrate counsel’s trial strategy in
allowing the defendant to testify, but not going further into his version of
events.  See Johnson, 169 S.W.3d at 235.  Agosto’s complaint on appeal
does not “reveal an error attributable to the court and not simply to defense
counsel.”  Id. at 232.  Absent such error, the proper analysis is one
under Strickland.  Id.  Agosto’s contention thus is without
merit.

Conclusion

We hold that Agosto’s
trial counsel did not render ineffective assistance by failing to allow Agosto
further testimony in the punishment phase.  We therefore affirm the judgment of
the trial court.

 

 

                                                          Jane Bland

                                                          Justice

 

Panel consists of Judges Taft, Bland,
and Sharp.

Publish.  Tex. R. App. P. 47.4.

 









[1] Delgado is also Colombian, hence her familiarity with
the Colombian accent.