**AFFIRM; and Opinion Filed June 17, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-00513-CR

### JULIA ROSE DECATUR-SCHRADER, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-80222-2012**

## MEMORANDUM OPINION

Before Justices Bridges, O'Neill, and Brown
Opinion by Justice Brown

Appellant Julia Rose Decatur-Schrader was charged by indictment with aggravated assault with a deadly weapon. A jury found appellant guilty and assessed her punishment at eight years' confinement. In two issues on appeal, appellant contends she received ineffective assistance of counsel that denied her the right to testify during the punishment phase and thus the trial court erred in failing to grant her a new trial on punishment. We affirm the trial court's judgment.

During the guilt/innocence phase of the trial, the evidence showed that in September 2011, appellant was living temporarily with her ex-husband, Scott Schrader, and their eleven-year-old daughter, A.S., in Scott's Plano apartment. One night, appellant left A.S. alone in the apartment to attend a concert in Dallas. Appellant had told Scott she was taking A.S. to the concert with her, so he had gone out with his brother. When Scott returned home at about 1:00

a.m., he found A.S. home alone. Scott texted appellant and told her she needed to move out. Scott then told A.S. to go to bed, and he took his dog out to a courtyard in the center of the apartment complex. A.S., thirteen at the time of trial, testified that while her dad was in the courtyard, appellant returned to the apartment and was angry. Appellant told A.S., "I will stab him if I have to," and lifted her shirt to show a knife in her waistband. Appellant left the apartment.

Appellant went out to the courtyard and began screaming and yelling at Scott. She then began to hit him in the head with her fists, causing him to bleed. From the balcony of her father's apartment, A.S. witnessed her mother hitting her father. Witnesses at another apartment called 911 to report the attack. Appellant left the courtyard momentarily. When she returned Scott's back was to her, and she stabbed him once in the back with a hunting knife. The entire incident in the courtyard was audio-recorded on appellant's cell phone. The recording was admitted into evidence and played for the jury. After the stabbing, police found appellant and A.S. walking briskly down a nearby street.

Scott's wound was "fairly large," and he was hospitalized for several days as a result. The knife narrowly missed his aorta, which would have killed him. Scott nevertheless testified that he did not want appellant to be in jail.

The defense presented several witnesses during the guilt/innocence phase of trial. Appellant did not testify. The jury found appellant guilty of aggravated assault with a deadly weapon.

At the punishment phase, the State did not present any additional evidence. The defense called Scott, who testified that probation would be an appropriate punishment for appellant. He also stated he thought appellant needed psychiatric help and that she could get the help she needed on probation. The defense then called Marvin Small, who had dated appellant for about

six months after she and Scott divorced. According to Small, it appeared that Scott was stalking appellant.

Then, defense counsel indicated he was going to call appellant as a witness, but asked to put something on the record first. Outside the presence of the jury, appellant gave the following testimony:

Q      Okay. You understand at this point that Scott, the victim, has already suggested to the jury that he thinks probation would be appropriate?

A      Yes.

Q      I am telling you here in open court that in all my heart and all my professional opinion I believe that jury is going to give you probation. Do you understand that?

A      Yes.

Q      And you are telling me that there are things you want them to know?

A      Yes.

Q      No matter what?

A      Yes.

Q      Please pardon me, but I don't think I've driven this point home to you sufficiently enough. You are aware that if you take that stand there is a statistical possibility that you will end up with prison time?

A      Why would I be aware of that?

Q      I am trying to explain to you, I believe with all my heart and soul, and I could be correct - - wrong, but Mr. Schrader asked for probation. And if he asked for it, there is an extremely strong - - and I am telling you here in open court in front of everybody, I believe you're going to get probation.

A      Nothing Mr. Schrader said so far was true, so why would I believe what he said is true?

Q      You don't have to. The jury does. My point is, I know you want to finish this. You want to tell him he is wrong. But if you do so - -

A      No. No. I want to talk to the jury.

Q      I am making my last plea to you as your attorney. I am telling you, do not speak to this jury. Point blank, I am telling you, it is a mistake. It is your

–3–

decision and your decision alone, but I am telling you, in my professional opinion, you take that stand, you are going to prison. You do not take that stand, you will have probation. And I leave it to you. Decide now, please.

After an off-the-record discussion, the following occurred:

THE COURT: All right. We have one more witness from the defense.

Ms. Schrader, just to make it abundantly clear, I want to cover a few areas on the record. [Defense counsel] has told you his opinion. And I don't want you to discuss anything that you and he have discussed, but it is ultimately your decision as to whether or not to testify in a case. It's my decision, if there's a proper objection, what testimony to allow in. But nobody knows what this jury is going to do. As a prosecutor and as an attorney for many years before I was a judge, I found it impossible, foolhardy, to try to guess what a jury is going to do. There's no way to know. So I want to make sure that you understand that [defense counsel], with his experience, believes what he thinks is best. But he is not - - does not know what the jury is going to do. It's ultimately going to be their decision, and your decision has to be based on the information you have and the advice of counsel, independent of any hope of what the jury will or will not do. You understand that?

THE DEFENDANT: Yes.

The defense went on to call Eric Harter, a close friend of appellant's, who testified that to his knowledge appellant had never been convicted of a felony in any state. Appellant did not testify. In closing arguments, defense counsel asked for probation, and the prosecutor asked for an eight-year sentence. The jury assessed punishment at eight years' confinement.

Represented by new counsel, appellant filed a motion for new trial in which she alleged she received ineffective assistance of counsel. She asserted trial counsel was ineffective when he advised her she would go to prison if she testified and would get probation if she did not. At the hearing on the motion for new trial, appellant testified that she wanted to testify in the punishment phase and, based upon counsel's advice that she would go to prison if she testified, she decided not to testify. In the affidavit attached to her motion for new trial, appellant stated her attorney's advice compelled her to make the decision not to testify.

According to her affidavit and her testimony at the new trial hearing, appellant would have presented mitigating evidence. She would have told the jury that after she graduated from

high school, she joined the Army and achieved the rank of sergeant. She served as military police and was in the first Gulf War. After seven years in the Army, she was honorably discharged and then served with the National Guard in Kentucky. She attended the University of Kentucky and has a degree in Health Administration. When she moved to Dallas, she became a realtor. She would have told the jury about the negative effect incarceration would have on her relationship with A.S. Since 2005, appellant has seen a psychiatrist for treatment of depression, anxiety, and ADHD. Doctors also told her she may be bipolar. She took various medications for these conditions, but was not on her medications at the time of the stabbing. She would have disclosed to the jury that she had a DWI conviction in Florida for which she received probation. She was aware that some drug charges pending in Collin County may have come out as well. Appellant would have told the jury she respected their verdict and would comply with any conditions of probation.

Appellant testified she understood it was her Constitutional right not to testify at trial. She recalled her trial counsel telling her that decision was hers and hers alone. She also recalled him telling her, in his opinion, she would be sent to prison if she testified. She further recalled her attorney saying he was leaving the decision to her.

Appellant's trial counsel testified that he believed the advice he gave appellant about testifying was sound. He stated, "Based on what I knew from that day, the reactions of the jurors, I stand by the decision and the advice that I handed, yes." When asked what the strategy was for giving appellant that advice, counsel testified that because the victim testified appellant should receive probation and the State did not present any witnesses, "It was our case to lose at that point." Counsel stated, "I could look at the jury, I assessed their opinions, I assessed their facial reactions, and I decided that there was nothing that we could do beyond that point but make it worse." Counsel stated later that when the victim took the stand and "looked straight at

that jury and said, 'She needs help, I think she should have probation,' in my opinion that is - - you just got the gift. Leave it alone."

When asked if he had given thought to presenting the evidence appellant wanted to present, counsel stated he did. His concern about appellant's military background was that it showed "an ability to self-defense" and would actually hurt appellant in the long run. Counsel further stated that he could not remember whether appellant ever told him she was seeing a psychiatrist. Trial counsel also indicated that appellant and Scott had been in a custody battle in court. He stated there was "a lot more that could come out in a family law case than in a criminal matter," and he did not think those allegations needed to come before the jury. Counsel was aware the Florida conviction was likely to be used as impeachment evidence.

The State's attorney asked counsel to describe appellant's demeanor during Scott's testimony. Counsel responded, "If I may be so bold, the jury was staring at us, and I was uncomfortable with what they were seeing." When asked if his advice not to testify was based on his "experiences in talking with [appellant] in the past, and [his] experiences or [his] observations of her reactions and actions during trial," counsel said that was a fair statement. Counsel testified he was not trying to unduly influence appellant regarding her right to testify.

In her first issue on appeal, appellant contends the trial court erred in failing to grant a new trial on punishment because she received ineffective assistance of counsel. Appellant admits in her brief that it is undisputed she knew she had a right to testify and that she had that right regardless of her attorney's advice. She asserts here, as she did in the trial court, that trial counsel's advice unduly influenced her decision not to testify.[1]

---

[1] Appellant cites the State Bar of Texas Performance Guidelines for Non-Capital Criminal Defense Representation. Guideline 7.5(C) provides, "The decision to testify rests solely with the client, and counsel should not attempt to unduly influence that decision." Performance Guidelines for Non-Capital Criminal Defense Representation 7.5(C) (State Bar of Tex. 2011). Prevailing norms of practice as reflected in bar association standards are guides to determine what is reasonable, not "inexorable commands." *Padilla v. Kentucky*, 559 U.S. 356, 366-67 (2010); *see In re McCann*, 422 S.W.3d 701, 707 (Tex. Crim. App. 2013) ("guidelines are only persuasive authority").

A defendant has a right to testify at her own trial, and such a right is fundamental and personal to the defendant. *Johnson v. State*, 169 S.W.3d 223, 235 (Tex. Crim. App. 2005); *Agosto v. State*, 288 S.W.3d 113, 116 (Tex. App.—Houston [1st Dist.] 2009, no pet.). Defense counsel shoulders the primary responsibility to inform the defendant of her right to testify, including the fact that the ultimate decision belongs to the defendant. *Johnson*, 169 S.W.3d at 235. *Strickland v. Washington* provides the appropriate framework for addressing an allegation that the defendant's right to testify was denied by defense counsel. *Id.*

To prevail on a claim of ineffective assistance of counsel, an appellant must show the following: 1) counsel's performance fell below an objective standard of reasonableness; and 2) a reasonable probability exists that, but for counsel's errors, the result would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *see Andrews v. State*, 159 S.W.3d 98, 101-02 (Tex. Crim. App. 2005). Judicial review of a claim of ineffective assistance of counsel must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). When an appellant presents her ineffective assistance claim to the trial court in a motion for new trial, an appellate court analyzes this issue as a challenge to the denial of the motion for new trial. *See Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004), *superseded by statute as stated in State v. Herndon*, 215 S.W.3d 901 (Tex. Crim. App. 2007). As such, an appellate court reviews the *Strickland* test through an abuse of discretion standard. We do not substitute our judgment for the trial court's, but rather we decide whether the trial court's resolution of the ineffective assistance claim was arbitrary or unreasonable. *Id.* We must view the evidence in the light most favorable to the trial court's ruling and presume that all reasonable factual findings that could have been made against the losing party were made against that losing party. Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the

trial court's ruling. *Id.* At a motion for new trial hearing, the trial court alone determines the credibility of the witnesses. *Colyer v. State*, No. PD-0305-13, 2014 WL 1686939, at *3 (Tex. Crim. App. Apr. 30, 2014).

Here, the trial court could have reasonably determined trial counsel's advice did not amount to a denial of appellant's right to testify and thus did not fall below an objective standard of reasonableness. Trial counsel felt very strongly that it would be a mistake for appellant to testify. He went so far as to state that appellant would get probation if she did not testify and would go to prison if she did. But the record reflects he warned appellant that he could be wrong. The record also reflects counsel informed appellant "it was [her] decision and [her] decision alone." Further, at the hearing on her motion for new trial, appellant testified she recalled counsel telling her the decision whether to testify was hers alone and recalled him leaving that decision to her. And, while the trial court had no duty to do so, *see Johnson*, 169 S.W.3d at 235, it reinforced to appellant that it was ultimately her decision whether or not to testify and that there was no way to predict what a jury would do. Appellant told the court she understood this. For these reasons, the trial court, who presided over the trial and was judge of the credibility of the witnesses at the new trial hearing, could have found that appellant, who admittedly knew she had the right to testify despite her attorney's recommendation not to, was not unduly influenced by her attorney and made her own decision not to testify. *Cf. id.* at 226-27 (defendant deprived of right to testify where he was unaware he had final authority to make decision to testify and counsel did not inform defendant he could testify against counsel's wishes).

To the extent appellant contends that trial counsel was ineffective for recommending she not testify, appellant has not shown that recommendation fell below an objective standard of reasonableness. At the motion for new trial hearing, defense counsel explained in detail his

strategic choices. Because the State did not present any punishment evidence and the victim had recommended probation, counsel thought appellant's testimony could only hurt her at that point. Further, had appellant testified, she ran the risk of having further negative information come out about her DWI conviction, pending drug charges, and custody battle with Scott. Although appellant asserts she would have offered evidence in mitigation of punishment, counsel thought appellant's military service may have worked against her and he did not remember her telling him she was seeing a psychiatrist. And, based on appellant's comment during the punishment phase that nothing Scott had said was true, as well as counsel's testimony suggesting appellant's demeanor during Scott's testimony was inappropriate, it did not appear appellant was ready to take responsibility before the jury for her actions. The trial court was in the best position to evaluate appellant's demeanor at trial and the validity of counsel's trial strategy. The court could have reasonably concluded counsel's recommendation that appellant not testify was based on reasonable trial strategy. The trial court did not abuse its discretion in denying appellant's motion for new trial on grounds that appellant failed to meet the first prong of *Strickland*.

In her second issue, appellant presents the question of how to analyze harm in this case. She contends the Texas Constitution provides more protection than the United States Constitution regarding the right to testify. As such, appellant argues, the denial of the right to testify is structural error to which a more relaxed harm standard applies. She asserts she is not required to show a reasonable probability she would have received a lesser sentence; instead, she is only required to show that she would have availed herself of the right to testify. We note that in *Johnson*, the court of criminal appeals held that the denial of the right to testify is not structural error. *Id.* at 237. Moreover, because we have concluded appellant did not meet the first prong of *Strickland*, we need not conduct a harm analysis under the second prong. Appellant's second issue is without merit.

We affirm the trial court's judgment.

/Ada Brown/
ADA BROWN
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

130513F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JULIA ROSE DECATUR-SCHRADER, Appellant

No. 05-13-00513-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas
Trial Court Cause No. 416-80222-2012.
Opinion delivered by Justice Brown.
Justices Bridges and O'Neill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 17th day of June, 2014.

/Ada Brown/

ADA BROWN
JUSTICE